IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-123 T

(Judge Francis M. Allegra)

EVERGREEN TRADING, LLC, by and through GLEN NUSSDORF AND CLAUDINE STRUM on behalf of GN INVESTMENTS, LLC, Partners Other Than the Tax Matters Partner,

Plaintiffs

v.

THE UNITED STATES,

Defendant

MOTION FOR PROTECTIVE ORDER

The United States hereby moves for a protective order barring plaintiffs from taking the depositions of three past and present Internal Revenue Service Office of Chief Counsel attorneys because the proposed discovery seeks irrelevant legal testimony and seeks disclosure of privileged deliberative communications concerning the development of regulations. Those depositions have been noticed for March 20-21, 2007. Copies of the deposition subpoenas are attached as Exhibits A-C.

INTRODUCTION

This litigation involves a challenge by Evergreen Trading, LLC (Evergreen), and its owners–members of the Nussdorf family (the "Nussdorfs") (collectively, the "Plaintiffs")–to a

Final Partnership Administrative Adjustments (FPAA)[1] issued by the Internal Revenue Service ("the Service") arising out of a series of transactions described in the complaint. In the FPAA, the Service made a series of determinations, principally that Evergreen's returns improperly reported the tax treatment of the transactions and that various penalties were applicable to underpayments of tax attributable to the improper reporting.

One of the transactions at issue was a "Son of BOSS" transaction. That shelter was widely marketed by Sentinel Advisors, LLC, and BDO Seidman, LLP, to customers seeking to create tax losses to offset unrelated economic gains.[2] To simplify, the Nussdorfs and Evergreen engaged in a series of three pre-planned steps in the transaction–(1) the purchase and sale of two large (but offsetting) call options on foreign currency, (2) transfer of those options to Evergreen in exchange for an ownership interest in Evergreen, and (3) disposition of the ownership interest in Evergreen. According to plaintiffs, the effect of these steps was to provide the Nussdorfs with a tax basis in their Evergreen interests far in excess of the economic value of Evergreen. Further, plaintiffs contend that, when they disposed of their Evergreen interests, they recognized a tax loss equal to the difference between the tax basis and economic value of Evergreen. The

---

[1] Under a special procedural regime enacted to govern audits of transactions involving partnerships, Sections 6221-6231, this audit was conducted at the partnership level and plaintiff's challenge to the Service's determinations is also presented in the name of the partnership.

[2] Evergreen also executed a second transaction executed involving a pre-planned acquisition of a series of exotic (and offsetting) foreign currency positions in December 1999 and disposition of those positions in January 2000. According to plaintiffs, this transaction had the effect, for tax purposes, of producing a large loss for the 1999 tax year with a corresponding large gain for the 2000 tax year. In the FPAA, the Service determined that the plaintiff's treatment of the transaction was improper and characterized this second transaction as an impermissible "straddle." Plaintiff's challenge to this determination raises issues separate and distinct from those presented by the proposed depositions and are not addressed by this motion.

Service had previously concluded that this tax shelter was abusive tax shelter and that the Service would disallow the claimed losses and impose penalties. Notice 2000-44, 2000-2 C.B. 255. Accordingly, in the FPAA issued to Evergreen (attached to the complaint), the Service determined that Plaintiffs' claimed tax treatment of the transaction was improper and that penalties were applicable to underpayments attributable to that treatment.

From a technical tax law perspective, this case presents issues of statutory construction and also calls for applications of time-honored doctrines such as substance-over-form and economic substance. For example, plaintiffs contend that the statutory language of the partnership tax rules, Sections 701-761 of the Internal Revenue Code of 1986, establish that the Nussdorfs' basis in their Evergreen interests is equal to the premium they paid for the call option they purchased and that this basis is not reduced by the premium they received for the call option they sold because their obligation under that option is too contingent to be recognized as a "liability" under Section 752(b). The United States, in contrast, will establish that plaintiffs' construction of the governing statutes is predicated upon an unduly formalistic analysis of the transaction which ignores the fact that tax consequences are determined by the substance–not the form–of transactions. Accordingly, as the purchased and sold call options are a single integrated and inseparable piece of property, their tax treatment is not determined (as plaintiffs contend) by treating the options as separate assets and liabilities. Further, the United States will establish that the transactions must be disregarded because they lack economic substance, profit potential, and business purpose.

The instant motion arises out of plaintiffs' apparent effort to buttress their statutory construction argument by establishing that employees of the Service (i.e., the proposed deponents) agreed with their proposed construction of Section 752(b) and the regulations

promulgated thereunder.[3] Indeed, plaintiffs selected those proposed deponents because of their role in the development of Treas. Reg. §§1.752-6 and 1.752-6T. Mr. Howells was the principal author of temporary regulations issued on June 24, 2003 (T.D. 9062), Ms. Fields was the principal author of temporary and final regulations issued on May 26, 2005 (T.D. 9207), and Ms. Young was the principal reviewer of the work done by Mr. Howells and Ms. Fields. Most important, none of the proposed deponents had any personal involvement in the audits of Evergreen or the Nussdorfs. Accordingly, the Service has declined, pursuant to Treas. Reg. § 301.9000-1, to authorize the proposed deponents to testify at the depositions. *See* attached Exhibits E-G.

ARGUMENT

The proposed depositions are improper for two distinct reasons. The depositions seek irrelevant testimony; binding precedent holds that testimony about the development and construction of a regulation has "no probative value." In addition, the proposed depositions seek disclosures concerning predecisional discussions within the Service that are protected by the executive or deliberative process privilege. Accordingly, the Court should issue the requested protective order to bar taking of the proposed depositions.

A. Testimony regarding the development and construction of the tax regulations is not relevant, even under the liberal standards of the discovery rules.

Of course, the proper construction of Section 752 and the regulations, as well as their application to the transactions at issue here, is an issue of law for the Court to decide based upon

---

[3] The precise parameters of the proposed depositions is unclear because plaintiffs have not responded to a letter, dated March 5, 2007 (attached as Exh. D), requesting a more detailed description of the topics plaintiffs wanted to cover in the depositions.

its analysis and application of the governing legal authorities. *See, e.g,* Neptune v. United States, 38 Fed. Cl. 510, 513 (1997), *aff'd* 178 F.3d 1306 (Fed. Cir. 1998). Under this principle, the question presented by the proposed testimony is whether the testimony of individuals involved in drafting the regulations could be of any relevance to the Court's analysis of the statute and regulations.

This circuit has ruled, in an analogous context, that the testimony of the authors of a regulation has no probative value in construing the regulation. In Honeywell v. United States, 661 F.2d 182 (Ct. Cl. 1981), a case involving the proper construction of a procurement regulation, the plaintiff sought to rely upon the testimony of the three individuals who prepared the initial draft of the regulation. In rejecting the plaintiff's challenge to the procurement board's construction of the regulation as failing to consider this legislative history of the regulation, the Court of Claims stated that "[w]e do not find such statements to be of probative value." Id. at 185. This binding precedent requires the Court to conclude that the proposed testimony has no probative value and, therefore, the proposed depositions do not satisfy even the liberal discovery standard under RCFC 26(b).

Two other circuits have recently reached similar conclusions in refusing to consider the statements of former government officials in construing tax regulations. In Siddell v Commissioner, 225 F.3d 103, 111 (1st Cir. 2000), a case involving a dispute concerning the construction of a regulation, the First Circuit rejected as irrelevant the taxpayers' attempted reliance upon internal Service memoranda purportedly showing the Service's internal construction of a regulation, stating—

> Because these internal memoranda represent the personal views of the authors, not the official position of the agency, they do not figure in our decisional calculus.

The Third Circuit, similarly rejecting an effort to rely upon evidence internal Service discussions in construing a regulation, stated that "we accord little weight to the . . . recollections of the several Treasury officials who submitted affidavits regard the meaning of the [regulation.]" Connecticut General Life Insurance Co. v. Commissioner, 177 F.3d 136, 145 (3rd Cir. 1999). *See* Armco Corp. v. Commissioner, 87 T.C. 865, 867-68 (1986) (statement of principal drafter not relevant in construing regulation). All of these cases show that, even if the proposed depositions were to produce the testimony plaintiffs hope to develop, that evidence would still have no value.

At least three separate rationales support this unanimous conclusion that the testimony of the drafters is not relevant in construing a regulation. First, such testimony impinges upon the role of the Court as the arbiter of the law. Second, after-the-fact testimony concerning the meaning of a regulation developed in the context of litigation is inherently unreliable. Finally, the cases recognize that the testimony of a single official is of no value in determining the agency's construction of a regulation.[4] Regardless of the rationale the depositions are irrelevant

---

[4] For instance, in Armco Corp., the court stated that "no one's personal views can be accepted as a pronouncement of the intended meaning of the regulation," and accordingly held that an affidavit executed by the principal drafter of the regulation at issue was not relevant to determining the construction of the regulation. Id. at 867. Furthermore, this Court appears to have adopted this rationale in an analogous context when it prohibited discovery of internal background files concerning the development of a Service ruling, stating that predecisional memoranda prepared by Service line attorneys–

> will be relevant in this action only in very limited circumstances. And, even in those limited circumstances, various materials in those files undoubtedly will shed no light whatsoever on what the IRS, as an agency, felt the ruling meant or means. Thus, for example, the files could contain memoranda from individual IRS line attorneys setting forth positions that do not represent the agency's formal view of the law, including positions that were rejected by the IRS or the Treasury Department in choosing the final terminology and scope of the ruling. In this regard, plaintiff's attempt to analogize the ruling's background file to a statute's legislative history, in

and the motion for protective order should be granted.

B. The requested depositions seek disclosure of privileged information.[5]

---

> fact, proves informative, but only in sounding a note of caution. Seemingly, just as courts often refuse to attribute to Congress views expressed by a staffer or an individual member of Congress, particularly where such statements are made after the passage of a law, so too should this court be extraordinarily hesitant to attribute to the IRS or the Treasury Department interpretations of a revenue ruling made by individual IRS employees that represent their personal views, rather than the official position of the agency. Thus, even if, in general, the background file of a revenue ruling might, in highly limited circumstances, be relevant in resolving a question of statutory construction, it remains that the only materials in that file that would figure in this court's decisional calculus are those reflecting some high level of agency approval.

Von's Companies v. United States, 51 Fed. Cl. 1, 21 (2001) (citations and footnote ommitted). *See also* Flamingo Fishing Corp. v. United States, 31 Fed. Cl. 655, 658 (1994). None of the persons plaintiffs seek to depose occupied positions that would cause their views to "reflect[] some high level of agency approval" within the meaning of *Von's Companies*: Mr. Howells and Ms. Fields were line attorneys in the Passthroughs and Special Industries Branch of the Internal Revenue Service's Office of Chief Counsel, and Ms. Young was a first-level supervisor of Mr. Howells and Ms. Fields.

[5] The Court should address issues of relevance before it turns to issues involving executive privilege. In Freeman v. Seligson, 405 F.2d 1326, 1338-39 (1968), the U.S. Court of Appeals for the District of Columbia Circuit recognized that it is economical and sensible to defer action on privilege claims until other grounds have been resolved, stating–

> We agree, however, with the Secretary that matters of privilege can appropriately be deferred for definitive ruling until after the production demand has been adequately bolstered by a general showing of relevance and good cause, and at least the rough dimensions of the Secretary's burden have been set. This technique may, as to particular items, eliminate a 'showdown' on privilege. Perhaps also the frequently, and in this case almost certain, laborious page-by-page examination which assertions of privilege will require, certainly of the Secretary and perhaps also of the court, may be avoided or curtailed.

*Accord* Pierson v. United States, 429 F. Supp. 384, 390 (D. Del. 1977); CIT Group/Equipment Financing, Inc. v. United States, 24 Cl. Ct. 540, 541 (1991). That common-sense ruling should guide the Court here; the Court should not tackle issues of privilege before it resolves the threshold question of relevance.

The law recognizes a deliberative process privilege protecting the internal pre-decisional deliberations of a government agency from disclosure. *See generally* Marriott International Resorts, LP v. United States, 437 F.3d 1302 (Fed. Cir. 2006). The Supreme Court recognized such a privilege in United States v. Nixon, 418 U.S. 683, 705 (1974), explaining that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." Given the strong public interest in having Government officials candidly discuss prospective operations and policies, it is well-established that the Government may invoke a privilege that is not available to other parties. The privilege allows the Government to prevent the disclosure of the discussions, recommendations, and methods of reasoning of its officials, which, if subject to disclosure, would temper candor during the decision-making process. *E.g.*, NLRB v. Sears, Roebuck & Co., 421 U.S. at 151; Kaiser Aluminum & Chemical Corp. v. United States, 141 Ct. Cl. 38, 47-50, 157 F. Supp. 939, 944-47 (1958).

In this court, the privilege protects "inter- and intra-agency deliberative communications or official information, [and] protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" CACI Field Services, Inc. v. United States, 12 Cl. Ct. 680, 686 (1987). Under this authority, documents may properly be withheld as privileged if they satisfy two substantive requirements. First, the documents must be pre-decisional–that is, they must precede the subject decision in temporal sequence. Walsky Construction Co. v. United States, 20 Cl. Ct. 317, 320 (1990). Second, the documents must be deliberative; that is, the documents must reflect the "interchange of recommendations and deliberations that contribute to the decisionmaking or policymaking process." CACI, 12 Cl. Ct. at 687.

Both requirements are satisfied here. The proposed deponents' knowledge of the regulation-drafting process relates to pre-decisional discussions within the Service. Likewise, their knowledge involves the deliberative process–that is, the exchange of views amongst Service employees during the policy formulation process. That knowledge is privileged an may not be discovered through the proposed depositions.

CONCLUSION

For the foregoing reasons, the Court should allow the requested motion for protective order.

Respectfully submitted,

s/ Stuart J. Bassin
STUART J. BASSIN
Attorney of Record for Defendant
Department of Justice
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6418
FAX (202) 514-2507
E-MAIL: stuart.j.bassin@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
ADAM F. HULBIG
Trial Attorney
JOSEPH B. SYVERSON
Trial Attorney

March 13, 2007

s/ David Gustafson
Of Counsel