IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **EVERGREEN TRADING, LLC, by and through GLENN NUSSDORF AND CLAUDINE STRUM on behalf of GN INVESTMENTS, LLC, Partners Other Than the Tax Matters Partner,** | ) | |
| **Plaintiffs,** | ) | **No. 06-123 T** |
| **v.** | ) | **Judge Francis M. Allegra** |
| **THE UNITED STATES,** | ) | **Electronically Filed – March 19, 2007** |
| **Defendant.** | ) | |

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

---

Evergreen Trading, LLC, by and through Glenn Nussdorf and Claudine Strum on behalf of GN Investments, LLC ("Plaintiffs"), respectfully oppose Defendant's Motion for a Protective Order blocking discovery relating to an administrative agency adopting a retroactive regulation reaching back four years to reverse judicial precedent. In order to make a full and fair determination of the questions presented by the case law, the Court and Plaintiffs need answers and documents relating to at least six areas.

## OVERVIEW

Based on representations that they could double their money by entering bullish options in the then newly-launched Euro and reap multiples up to 10:1 on other foreign currency options and up to 38:1 on more sophisticated Euro options, the Nussdorf family invested through the highly-experienced foreign currency traders at Sentinel Advisors, LLC. The trusted accounting firm that helped the Nussdorfs quadruple their family business assured them that the then-prevailing tax law also provided significant potential tax benefits.

Four years after the fact, the IRS attempted to retroactively reverse that prevailing precedent by regulation (Treas. Reg. § 1.752-6T and its successor § 1.752-6). Indeed, the IRS adopted these regulations eight years after its highest echelons determined that the IRS needed a regulation to "reverse *Helmer*." Here, the IRS relies on that retroactive regulation in its Final Partnership Administrative Adjustment ("FPAA") to treat a contingent obligation (under a sold option) as if it were a fixed "liability" for purposes of calculating the basis of partnership interest under Section[1] 752. That contention contradicts a long and unbroken line of cases.[2]

The regulation is invalid for a number of reasons, some but not all of which the United States District Court cited in invalidating this retroactive regulation (at least for investments like the Nussdorfs' preceding August 11, 2000) in *Klamath Strategic Inv. Fund, LLC ex rel St. Croix Ventures, LLC v. United States*, 440 F.Supp.2d 608, 626 (E.D. Tex., 2006). Other grounds turn on the inherently factual inquiry relating to the administrative agency's motives and reasons for adopting such a regulation. Under the controlling case law, those grounds turn on (i) why, as a factual matter, the administrative agency adopted the regulation, (ii) why the agency applied it retroactively, and (iii) why the IRS waited so long. Complete answers to these questions can only be supplied by those most involved in the adoption. And in a matter as critical as invalidating a regulation, this Court needs – as is entitled to – a complete development of these grounds.

---

1 Unless indicated otherwise, all section references are to the Internal Revenue Code of 1986, as amended through December 31, 1999 (26 U.S.C. § ___; "Code").

2 *See, e.g., LaRue v. Commissioner,* 90 T.C. 465 (1988); *Long v. Commissioner,* 660 F.2d 416 (10th Cir. 1981), *aff'g* 71 T.C. 1 (1978); *Helmer v. Commissioner, T.C. Memo 1975-160. See also, United States v. General Dynamics,* 481 U.S. 239, 243 (1987).

## DISCUSSION

### A. Under the Controlling Case Law, Plaintiffs and Ultimately the Court Need to Determine the Motives of the Administrative Agency that Bootstraps Its Position In Litigation, Seeks to Administratively Reverse Judicial Precedent, and Unreasonably Delays and Extends a Retroactive Regulation.

The case law clearly fixes the inherently factual, motive-based determinations that the Court and Plaintiffs need to make. Defendant identified three people who had personal knowledge regarding the circumstances and motives surrounding the adoption of this disputed regulation: Horace Howells, Laura Fields, and Donna Young. Contrary to the heart of Defendant's Motion, how someone at the IRS construes a statute or regulation holds no interest for Plaintiffs. However, the case law requires a determination as to the IRS motives in adopting that retroactive regulation as a means of reversing the precedent that governed these investments. That presents at least these six sets of questions that the authors and reviewers of the regulation can best answer:

1. Was Treas. Reg. § 1.752-6T adopted "in aid of litigation"?

For the same reason that every second grader understands that it is unfair for one side to make up its own rules, the law recognizes that regulations adopted in aid of litigation carry little or no weight. *Chock Full O'Nuts Corp. v. United States*, 453 F.2d 300, 303 (2d Cir. 1971) ("[T]he Commissioner may not take advantage of his power to promulgate retroactive regulations during the course of a litigation for the purpose of providing himself with a defense based on the presumption of validity accorded to such regulations."); *Vinson v. Commissioner,* 38 T.C. Memo. 1979-175 ("[R]espondent may not by a unilateral ruling bootstrap himself into the result he seeks in a litigated case."); *Ludwig v. Commissioner*, 68 T.C. 979, 985 n.4 (1977) ("The courts have not looked with favor upon

bootstrapping revenue rulings issued shortly prior to the initiation of litigation"). Bootstrap regulations of this sort necessarily claim retroactive application and, as the as the Supreme Court made clear in striking retroactive regulations in *Bowen v. Georgetown Univ. Hosp.* 488 U.S. 204, 208 (1988), "[r]etroactivity is not favored in the law [and] a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms."

Here, Plaintiffs hope to establish through the depositions that the IRS adopted the most strident set of rules for the *sole* purpose of retroactively aiding, if not dictating, its position in litigation.[3] Further, Plaintiffs have specific reason to believe that, if the deponents are required to be responsive, the depositions will lead to specific additional evidence regarding the coordination between adoption of the regulation and an IRS litigation meeting two days later dealing with this specific topic.

2. <u>On a related note, was the regulation adopted for the purpose stated – that is, to "prevent" abuse?</u>

At the time of adoption, the IRS stated that the purpose of the regulation was to prevent abuse. For reasons set forth below, the retroactive regulations depart from the limited purpose of Act § 309. "Therefore, these regulations are being applied retroactively in accordance with the directive from Congress in

[3] On page 6 of Defendant's Motion for a Protective Order, the Defendant concedes that the regulation was developed in the context of litigation: "Second, after-the-fact testimony concerning the meaning of a regulation developed in the context of litigation is inherently unreliable."

section 309(d)(2) of the Act and ***to prevent abuse***." Treas. Reg. § 1.752-6T. (Emphasis added.).

As to the only remaining stated purpose, Plaintiffs hope to establish through the depositions that the IRS adopted the most strident set of rules and regulations for the sole purpose of punishing past transactions by reversing the then-prevailing law – not to "prevent" future transactions.

3. As that point triggers, was the regulation adopted for the purpose of reversing judicial precedent by administrative fiat [and thereby violate the Separation of Powers doctrine]?

The United States Court of Appeals for the Federal Circuit invalidated a regulation for just that reason in *Bankers Trust of N.Y. Corp. v. United States,* 225 F.3d 1368 (Fed. Cir. 2000):

> After considering the arguments on both sides, and fully reviewing the positions taken by our sister circuits in related cases, we conclude that the Court of Federal Claims erred in holding that, on the facts of this case, an Executive agency regulation could effectively construe a statute in a manner different from a prior definitive court ruling.
>
> . . .
>
> . . . It is a fundamental principle of Constitutional law that the duty to interpret the statutes as set forth by Congress is a duty that rests with the judiciary: "It is, emphatically, the province and duty of the judicial department, to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803). In executing this duty, we may not give the IRS or any executive branch agency the power to overrule an established statutory construction of the court-a power that, with regard to our prior precedents, even a later panel of this court lacks. We will follow our precedent, and leave harmonization of the circuits to the Supreme Court and Congress.

*Bankers Trust of N.Y. Corp. v. United States,* 225 F.3d 1368, 1376

(Fed. Cir. 2000).

The precedent of the Federal Circuit in *Bankers Trust* – particularly with its reliance upon perhaps the most important case ever handed down by the Supreme Court, *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803) – could not be clearer.

Eight years earlier, the highest echelons of the IRS determined that *Helmer* constituted the prevailing law and that a regulation was needed to "reverse *Helmer*."[4]

> ***P&SI does not believe alternative of attacking this via the proposed partnership anti-abuse regulation is advisable.***
>
> * * *
>
> Treasury [apparently] opposes leaving it open with possibly one rule for short sales but latitude for taxpayers re options ***(and does not think can do same for options in a RR [revenue ruling], need regulation to overrule Helmer.)***
>
> * * *
>
> Whole issue is mismatch between inside and outside basis. Good[?] basis inside because agreed to do this in future [or because partnership has the cash?]: Treasury wants to reach right result re outside basis too: a basis kick-up there too, ***no matter how get to that result, and only way there is § 752: using it to cram through result. Understands it is not entirely clean way of doing it.***
>
> * * *
>
> ***Existing authority is contrary to a position that options create liabilities.*** Helmer held that no partnership liability is created upon receipt of option payments by a partnership.

---

4 During 1995, the Chief Counsel of the Internal Revenue Service (Stuart Brown), at least three divisions within the National Office of the Internal Revenue Service, and the Treasury Department (Financial Instruments & Products Instruments ("FI&P"), Pass-throughs & Special Entities ("P&SI"), and Corporate) considered the application of *Helmer* and related topics. As revealed by notes relating to that consideration and the series of unrelated meetings, the IRS concluded that a regulation was needed to change the partnership basis rule in *Helmer*.

* * *

FI&P apparently says every option, whether deep-in-money or not, is a § 752 obligation [liability?]. Others apparently disagree. ***(That is apparently at odds with Helmer; hence they are talking about maybe doing this as a regulation (overruling a case) rather than just a RR (or something).)***

* * *

Apparently Brown's worried this proposed ruling and RR 95-8 seem to run in opposite directions. Re Helmer, etc., if we had to choose one poison or another, ***he tended agree with Helmer (a position IRS perhaps needs,*** lesser of two evils).

In this instance, Plaintiffs hope to discover through the depositions additional facts surrounding the disclosure/waiver in the Preamble to Treas. Reg. § 1.752-6T that admits "[t]he definition of a liability contained in these proposed regulations does not follow *Helmer v. Commissioner*, T.C. Memo 1975-160. (The Tax Court, in *Helmer*, held that a partnership's issuance of an option to acquire property did not create a partnership liability for purposes of section 752.)" Preamble to Treas. Reg. § 1.752-6T, 68 F.R. 37434, June 23, 2003.

4. Why did the IRS wait eight years to adopt the regulation that those at the highest echelons of the IRS (including the then Chief Counsel Stuart Brown) determined in 1995 was needed to reverse *Helmer*?

In adopting Treas. Reg. § 1.752-6T, the IRS violated the Administrative Procedures Act requirement that agencies give public notice of proposed rule making and allow a period for public comment before a proposed rule is finalized. 5 U.S.C. § 553(b), (c). Rules not promulgated in accordance with the notice and comment requirements are invalid unless such rules are excepted from those procedures. *United States v. Garner*, 767 F.2d 104, 119-21 (5th Cir. 1985); *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 210 (5th Cir. 1979). The exception relied upon by the Treasury Department for promulgating Treas. Reg. § 1.752-6T is the

"good cause" exception. An agency may invoke "good cause" only when it finds that the notice and comment are impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b)(B). The "good cause" exception to the notice and comment period must "be read narrowly." *Garner*, 767 F.2d at 120.

Defendant cannot qualify for the "good cause" exception because the nearly four-year delay – not to mention the eight year delay – between the promulgation of the retroactive regulation without a notice and comment period and the passage of the statutory authority upon which it relied. *See, e.g., American Iron & Steel Inst. v. EPA*, 568 F.2d 284, 292 (3d Cir. 1977) (Delay is a "decisive factor" in rejecting a "good cause" exception where the agency's failure to follow the notice and comment period was a function of its own delay); *Texas Food Indus. Assoc. v. U.S. Dep't of Agriculture*, 842 F.Supp. 254, 260 (W.D. Tex. 1993) ("[W]hen a federal agency creates time pressures upon itself as a result of its own lack of immediate action, such conduct further supports a finding that no good cause exists to depart for the standard rulemaking procedures").

Here, Plaintiffs and the Court can only confirm whatever grounds may or may not exist for the IRS' "good cause" through deposition of those who finally adopted the disputed regulation.

5. <u>On a related note, why did the IRS wait almost four years after the adoption of Section 358(h) before adopting the regulation Congress directed?</u>

The IRS points to Section 309(c) of the Community Renewal Tax Relief Act of 2000, Pub. L. No. 106-554, 114 Stat. 2763 (2000), (the "Act"), which

added Section 358(h) to the Internal Revenue Code as the authority for adopting the disputed regulation:

> In section 309(C) and (d)(2) of the Act, Congress directed the Secretary to prescribe rules to provide: appropriate adjustments under subchapter K of Chapter 1 of the Code to prevent the *acceleration* or *duplication* of losses through the assumption (or transfer of assets subject to) liabilities described in section 358(h)(3) . . . in transactions involving partnerships. 68 Fed. Reg. 37414, 37415. (Emphasis added).

Both the "good cause" and "due process" ramifications of retroactive regulations, however, raise the question of why the IRS delayed the adoption until long after the Nussdorf family and many others were solicited, invested, and closed their transactions.

Again, the authors of the disputed regulation are in the best position to provide the answers to these questions through depositions.

6. <u>Why did the authors or anyone think that the retroactive regulation addresses situations that Congress limits to those that "accelerate" or "duplicate" losses?</u>

As noted, Congress limited the authority granted by Section 358(h) to partnership situations that "accelerate" or "duplicate" losses. It reiterated that narrow grant of authority in Section 309(c) of the Act as limited to:

> Rules which provide appropriate adjustments under subchapter K of chapter 1 of the Internal Revenue Code of 1986 to prevent the *acceleration* or *duplication* of losses through the assumption of (or transfer of assets subject to) *liabilities* described in section 358(h)(3) [*i.e.*, corporate liabilities] of such Code (as added by subsection (a)) in transactions involving partnerships... Act § 309(c). (Emphasis added).

> The retroactive regulations do not involve corporate formations or corporate restructurings or Section 358(h) but rather are limited to determinations of partner's bases in partnerships under Section 752. Nor do the basis determinations required by the retroactive regulations "prevent the acceleration or duplication of losses." In fact, the transaction that Section 358(h) was intended curb, the transaction described in Notice 2001-17, bears no relationship structurally or technically to the transactions the retroactive regulations openly seek to reverse, *i.e.*, a Notice 2000-44 transaction.
>
> Here, only the authors can explain why, if at all, the transactions covered by the retroactive regulation either "accelerate" or "duplicate" losses for nothing in the Preamble or on the face of the regulation address that subject.

Plaintiffs intend to cover all of the above listed topics with the deponents. Defendant claims that "the testimony of the authors of a regulation has no probative value *in construing the regulation*." Defendant's Motion for a Protective Order, p.5 (Emphasis added.).[5] Plaintiffs intend to depose Horace Howells, Laura Fields, and Donna Young not to learn how those individuals would construe the regulation; but instead, Plaintiff intends to prove through their testimony that the regulation is invalid because the IRS, acting as it must through its designated agents, adopted this regulation for improper purposes. That line of inquiry is probative, relative, and reasonably calculated to lead to the discovery of admissible evidence. Indeed, their testimony may lead to the best evidence of prohibited institutional purposes.

---

[5] Defendant was unable to find a case on point for its position and instead argues by analogy to a case concerning procurement regulations.

**B. Defendant Improperly Asserted The Deliberative Process Privilege.**

The burden of justifying the application of the governmental deliberative process privilege rests with the party seeking to invoke it. *Pacific Gas & Elec. Co. v. U.S.*, 70 Fed.Cl. 128, 133 (2006). To invoke the deliberative process privilege, the party resisting discovery must meet several procedural requirements. *Id.* at 134. First, the head of the agency that has control over the requested document must assert the privilege after personal consideration. *Id.* Alternatively, and recently confirmed as an appropriate practice by the Federal Circuit, "the head of an Agency can, when carefully undertaken, delegate authority to invoke the deliberative process privilege on the Agency's behalf." *Id. citing Marriott Intern. Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (Fed. Cir. 2006).

> The Federal Circuit's approach in *Marriott* is consistent with the reasoning in other cases holding that counsel are not permitted to invoke the privilege, that is, to ensure that the privilege is invoked as a result of an executive decision about the exigencies of executive management, rather than as a result of trial counsel's decision about a desirable litigation strategy.
>
> *Pacific Gas & Elec. Co. v. United States*, 70 Fed.Cl. 128, 135 ( 2006).

The party seeking protection "must state with particularity what information is subject to the privilege." *Walsky Constr. Co. v. United States,* 20 Cl.Ct. 317, 320 (1990). In addition, "the agency must supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document." *Walsky,* 20 Cl.Ct. at 320 (citing *Mobil Oil Corp. v. Dep't of Energy,* 102 F.R.D. 1, 6 (N.D.N.Y.1983)). Blanket assertions are not permissible. *Pacific Gas & Elec. Co. v. United States*, 70 Fed.Cl. 128, 135 (2006).

Defendant failed to meet its burden of justifying the application of the governmental deliberative process privilege. First, Defendant fails to demonstrate that the "head of the agency" has asserted the privilege, let alone after personal consideration. Second, Defendant

fails to provide a statement with particularity as to what information is protected; rather, Defendant cloaks all of the named deponents with a blanket of absolute privilege. Because the privilege has not been properly invoked, the privilege does not apply.

**C. The Deliberative Process Privilege Is Not Absolute.**

Even if Defendant had properly invoked the deliberative process privilege, the privilege is not absolute; rather, the privilege is qualified and subject to judicial oversight. *Marriott Int'l Resorts, L.P. v. United States,* 437 F.3d 1302, 1307 (Fed.Cir.2006). The deliberative process privilege may be overridden where necessary to promote "the paramount interest of the Government in having justice done between litigants," *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 407 (D.C.Cir. 1984) (quoting *Westinghouse Elec. Corp. v. City of Burlington, Vt.,* 351 F.2d 762, 767 (D.C.Cir. 1965)); or to "shed light on alleged government malfeasance," *Franklin Nat'l Bank,* 478 F.Supp. 577, 582 (D.C.N.Y., 1979).

In the present case, the IRS violated the United States Constitution as well as the Administrative Procedures Act in adopting and asserting Treas. Reg. § 1.752-6T RETROACTIVELY REACHING BACK FOUR YEARS to change the undeniably prevailing law governing Evergreen Trading and its investments.[6] "The Internal Revenue Service does not

[6] Courts have declined to give retroactive effect to regulations or rulings of the Commissioner when retroactivity would work a change in settled law relied on by the taxpayer and implicitly approved by Congress, *Helvering v. R. J. Reynolds Tobacco Co.*, 306 U.S. 110, 116, (1939), when it would lead to inequality of treatment between taxpayers, *International Business Machines Corp. v. United States*, 170 Ct.Cl. 357, 367 (1965), cert. denied, 382 U.S. 1028 (1966), when litigation involving the area clarified by the regulation had already been begun, *Commissioner of Internal Revenue v. Goodwyn Crockery* Co., 315 F.2d 110, 113 (6th Cir. 1963), or when, in general, the result of retroactivity in a particular case would be unduly harsh, *Lesavoy Foundation v. Commissioner*, 238 F.2d 589, 594 (3d Cir. 1956); cf. *Woodward v. United States*, 322 F.Supp. 332, 335 (W.D.Va.1971). Even tax statutes which have been given retroactive effect by Congress, although not necessarily unconstitutional because of their retroactivity, *Welch v. Henry*, 305 U.S. 134, (1938), may be denied such effect where "harsh, arbitrary, or unfair." See *e. g., Shanahan v. United States*, 447 F.2d 1082, 1084 (10th Cir. 1971).

have *carte blanche.* Its choice must be a rational one, supported by relevant considerations." *International Business Machines Corp. v. United States*, 170 Ct.Cl. 357, 367 (1965), cert. denied, 382 U.S. 1028 (1966). Plaintiffs must be permitted to investigate the reasons that Treas. Reg. § 1.752-6T came into being and whether the choice for the regulation to be retroactive was a rational one supported by relevant considerations. This Court should override Defendant's claim of deliberative process privilege because of the paramount interests of both having justice done between litigants and allowing Plaintiffs to shed light on an alleged government malfeasance in adopting this regulation to retroactively dictate the result in this litigation.

**D. Plaintiffs Should Be Permitted to Depose the Government's Witnesses As to Those Voluminous Documents the Government Produced In Discovery As to Treas. Reg. § 1.752-6T.**

The deliberative process privilege shields from discovery only agency opinions or recommendations; it does not protect purely factual material. *See Environmental Protection Agency v. Mink,* 410 U.S. 73, 90 (1973). In Plaintiff's First Request for Production of Documents[7], Request 14, Plaintiffs requested Defendant to please "produce the 'Background, Information, and Notes' file (known as the BIN file) and any other documents maintained by Defendant with respect to the drafting, proposal, reservations, vagueness, criticisms, invalidity, abandonment, and/or inconsistent application of Treas. Reg. § 1.752-6 (including Treas. Reg. § 1.752-6T)."

Defendant did produce thousands upon thousands of documents in response to Request 14. All of those documents are relevant, unprivileged, and fair game for questions of Horace Howells, Laura Fields and Donna Young. At a minimum, Plaintiffs should be able to depose

[7] Plaintiff's First Request for Production of Documents is attached hereto as Exhibit 1.

these witnesses on the documents Defendant produced and on the purely factual (and mixed matters of fact and law) aspects of Treas. Reg. §§ 1.752-6 and 1.752-6T.

## CONCLUSION

Plaintiffs respectfully pray that this Court DENY Defendant's Motion for Protective Order, and Order Defendant's to produce for deposition Horace Howells, Donna Young, and Laura Fields.

Respectfully submitted,

**s/ David D. Aughtry**

David D. Aughtry
Georgia Bar No. 028010
ATTORNEY FOR PLAINTIFFS

Chamberlain, Hrdlicka, White
Williams & Martin
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia 30303-1747
Telephone: (404) 659-1410
Facsimile: (404)659-1852
david.aughtry@chamberlainlaw.com

Dated this 19th day of March, 2007.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2007, I electronically filed the foregoing Plaintiffs' Opposition to Defendant's Motion for Protective Order with the Clerk of the Court using the CM/ECF System, which will automatically send email notification of such filing to the following attorney of record and the Tax Matters Partner:

Stuart J. Bassin, Esq.
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
555 4th Street, NW, Room 8822
Washington, D.C. 20044

Sentinel Advisors, LLC
Tax Matters Partner
Evergreen Trading, LLC
68 Carman Avenue
Cedarhurst, NY 11516

**s/ David D. Aughtry**

David D. Aughtry
Georgia Bar No. 028010
ATTORNEY FOR PLAINTIFFS

Chamberlain, Hrdlicka, White
Williams & Martin
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia 30303-1747
Telephone: (404) 659-1410
Facsimile: (404)659-1852
david.aughtry@chamberlainlaw.com