The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging [and being present or represented at the meeting] *the conference*, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within [10] *14* days after the [meeting] *conference* a written report outlining the plan. *A court may order that the parties or attorneys attend the conference in person. If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule (i) require that the conference between the parties occur fewer than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b), and (ii) require that the written report outlining the discovery plan be filed fewer than 14 days after the conference between the parties, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.*

### [2]—Committee Note of 2000 to Rule 26

**Purposes of amendments.** The Rule 26(a)(1) initial disclosure provisions are amended to establish a nationally uniform practice. The scope of the disclosure obligation is narrowed to cover only information that the disclosing party may use to support its position. In addition, the rule exempts specified categories of proceedings from initial disclosure, and permits a party who contends that disclosure is not appropriate in the circumstances of the case to present its objections to the court, which must then determine whether disclosure should be made. Related changes are made in Rules 26(d) and (f).

The initial disclosure requirements added by the 1993 amendments permitted local rules directing that disclosure would not be required or altering its operation. The inclusion of the "opt out" provision reflected the strong opposition to initial disclosure felt in some districts, and permitted experimentation with differing disclosure rules in those districts that were favorable to disclosure. The local option also recognized that — partly in response to the first publication in 1991 of a proposed disclosure rule — many districts had adopted a variety of disclosure programs under the aegis of the Civil Justice Reform Act. It was hoped that developing experience under a variety of disclosure systems would support eventual refinement of a uniform national disclosure practice. In addition, there was hope that local experience could identify categories of actions in which disclosure is not useful.

A striking array of local regimes in fact emerged for disclosure and related features introduced in 1993. *See* D. Stienstra, Implementation of Disclosure in United States District Courts, With Specific Attention to Courts' Responses to Selected Amendments to Federal Rule of Civil Procedure 26 (Federal Judicial Center, March 30, 1998) (describing and categorizing local regimes). In its final report to Congress on the CJRA experience, the Judicial Conference recommended reexamination of the need for national uniformity, particularly in regard





EXHIBIT

tabbies

1

to initial disclosure. Judicial Conference, Alternative Proposals for Reduction of Cost and Delay: Assessment of Principles, Guidelines and Techniques, 175 F.R.D. 62, 98 (1997).

At the Committee's request, the Federal Judicial Center undertook a survey in 1997 to develop information on current disclosure and discovery practices. *See* T. Willging, J. Shapard, D. Stienstra & D. Miletich, Discovery and Disclosure Practice, Problems, and Proposals for Change (Federal Judicial Center, 1997). In addition, the Committee convened two conferences on discovery involving lawyers from around the country and received reports and recommendations on possible discovery amendments from a number of bar groups. Papers and other proceedings from the second conference are published in 39 Boston Col. L. Rev. 517-840 (1998).

The Committee has discerned widespread support for national uniformity. Many lawyers have experienced difficulty in coping with divergent disclosure and other practices as they move from one district to another. Lawyers surveyed by the Federal Judicial Center ranked adoption of a uniform national disclosure rule second among proposed rule changes (behind increased availability of judges to resolve discovery disputes) as a means to reduce litigation expenses without interfering with fair outcomes. Discovery and Disclosure Practice, *supra*, at 44-45. National uniformity is also a central purpose of the Rules Enabling Act of 1934, as amended, 28 U.S.C. §§ 2072-2077.

These amendments restore national uniformity to disclosure practice. Uniformity is also restored to other aspects of discovery by deleting most of the provisions authorizing local rules that vary the number of permitted discovery events or the length of depositions. Local rule options are also deleted from Rules 26(d) and (f).

**Subdivision(a)(1).** The amendments remove the authority to alter or opt out of the national disclosure requirements by local rule, invalidating not only formal local rules but also informal "standing" orders of an individual judge or court that purport to create exemptions from — or limit or expand — the disclosure provided under the national rule. *See* Rule 83. Case-specific orders remain proper, however, and are expressly required if a party objects that initial disclosure is not appropriate in the circumstances of the action. Specified categories of proceedings are excluded from initial disclosure under subdivision (a)(1)(E). In addition, the parties can stipulate to forgo disclosure, as was true before. But even in a case excluded by subdivision (a)(1)(E) or in which the parties stipulate to bypass disclosure, the court can order exchange of similar information in managing the action under Rule 16.

The initial disclosure obligation of subdivisions (a)(1)(A) and (B) has been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses. "Use" includes any use at a pretrial

conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example. The disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and to documents the party intends to use if — in the language of Rule 26(a)(3) — "the need arises."

A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use. The obligation to disclose information the party may use connects directly to the exclusion sanction of Rule 37(c)(1). Because the disclosure obligation is limited to material that the party may use, it is no longer tied to particularized allegations in the pleadings. Subdivision (e)(1), which is unchanged, requires supplementation if information later acquired would have been subject to the disclosure requirement. As case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use.

The disclosure obligation applies to "claims and defenses," and therefore requires a party to disclose information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party. It thereby bolsters the requirements of Rule 11(b)(4), which authorizes denials "warranted on the evidence," and disclosure should include the identity of any witness or document that the disclosing party may use to support such denials.

Subdivision (a)(3) presently excuses pretrial disclosure of information solely for impeachment. Impeachment information is similarly excluded from the initial disclosure requirement.

Subdivisions (a)(1)(C) and (D) are not changed. Should a case be exempted from initial disclosure by Rule 26(a)(1)(E) or by agreement or order, the insurance information described by subparagraph (D) should be subject to discovery, as it would have been under the principles of former Rule 26(b)(2), which was added in 1970 and deleted in 1993 as redundant in light of the new initial disclosure obligation.

New subdivision (a)(1)(E) excludes eight specified categories of proceedings from initial disclosure. The objective of this listing is to identify cases in which there is likely to be little or no discovery, or in which initial disclosure appears unlikely to contribute to the effective development of the case. The list was developed after a review of the categories excluded by local rules in various districts from the operation of Rule 16(b) and the conference requirements of subdivision (f). Subdivision (a)(1)(E) refers to categories of "proceedings" rather than categories of "actions" because some might not properly be labeled "actions." Case designations made by the parties or the clerk's office at the time of filing do not control application of the exemptions. The descriptions in the rule are generic and are intended to be administered by the parties — and, when

needed, the courts — with the flexibility needed to adapt to gradual evolution in the types of proceedings that fall within these general categories. The exclusion of an action for review on an administrative record, for example, is intended to reach a proceeding that is framed as an "appeal" based solely on an administrative record. The exclusion should not apply to a proceeding in a form that commonly permits admission of new evidence to supplement the record. Item (vii), excluding a proceeding ancillary to proceedings in other courts, does not refer to bankruptcy proceedings; application of the Civil Rules to bankruptcy proceedings is determined by the Bankruptcy Rules.

Subdivision (a)(1)(E) is likely to exempt a substantial proportion of the cases in most districts from the initial disclosure requirement. Based on 1996 and 1997 case filing statistics, Federal Judicial Center staff estimate that, nationwide, these categories total approximately one-third of all civil filings.

The categories of proceedings listed in subdivision (a)(1)(E) are also exempted from the subdivision (f) conference requirement and from the subdivision (d) moratorium on discovery. Although there is no restriction on commencement of discovery in these cases, it is not expected that this opportunity will often lead to abuse since there is likely to be little or no discovery in most such cases. Should a defendant need more time to respond to discovery requests filed at the beginning of an exempted action, it can seek relief by motion under Rule 26(c) if the plaintiff is unwilling to defer the due date by agreement.

Subdivision (a)(1)(E)'s enumeration of exempt categories is exclusive. Although a case-specific order can alter or excuse initial disclosure, local rules or "standing" orders that purport to create general exemptions are invalid. *See* Rule 83.

The time for initial disclosure is extended to 14 days after the subdivision (f) conference unless the court orders otherwise. This change is integrated with corresponding changes requiring that the subdivision (f) conference be held 21 days before the Rule 16(b) scheduling conference or scheduling order, and that the report on the subdivision (f) conference be submitted to the court 14 days after the meeting. These changes provide a more orderly opportunity for the parties to review the disclosures, and for the court to consider the report. In many instances, the subdivision (f) conference and the effective preparation of the case would benefit from disclosure before the conference, and earlier disclosure is encouraged.

The presumptive disclosure date does not apply if a party objects to initial disclosure during the subdivision (f) conference and states its objection in the subdivision (f) discovery plan. The right to object to initial disclosure is not intended to afford parties an opportunity to "opt out" of disclosure unilaterally. It does provide an opportunity for an objecting party to present to the court its position that disclosure would be "inappropriate in the circumstances of the

action." Making the objection permits the objecting party to present the question to the judge before any party is required to make disclosure. The court must then rule on the objection and determine what disclosures — if any — should be made. Ordinarily, this determination would be included in the Rule 16(b) scheduling order, but the court could handle the matter in a different fashion. Even when circumstances warrant suspending some disclosure obligations, others — such as the damages and insurance information called for by subdivisions (a)(1)(C) and (D) — may continue to be appropriate.

The presumptive disclosure date is also inapplicable to a party who is "first served or otherwise joined" after the subdivision (f) conference. This phrase refers to the date of service of a claim on a party in a defensive posture (such as a defendant or third-party defendant), and the date of joinder of a party added as a claimant or an intervenor. Absent court order or stipulation, a new party has 30 days in which to make its initial disclosures. But it is expected that later-added parties will ordinarily be treated the same as the original parties when the original parties have stipulated to forgo initial disclosure, or the court has ordered disclosure in a modified form.

**Subdivision (a)(3).** The amendment to Rule 5(d) forbids filing disclosures under subdivisions (a)(1) and (a)(2) until they are used in the proceeding, and this change is reflected in an amendment to subdivision (a)(4). Disclosures under subdivision (a)(3), however, may be important to the court in connection with the final pretrial conference or otherwise in preparing for trial. The requirement that objections to certain matters be filed points up the court's need to be provided with these materials. Accordingly, the requirement that subdivision (a)(3) materials be filed has been moved from subdivision (a)(4) to subdivision (a)(3), and it has also been made clear that they — and any objections — should be filed "promptly."

**Subdivision (a)(4).** The filing requirement has been removed am this subdivision. Rule 5(d) has been amended to provide that disclosures under subdivisions (a)(1) and (a)(2) must not be filed until used in the proceeding. Subdivision (a)(3) has been amended to require that the disclosures it directs, and objections to them, be filed promptly. Subdivision (a)(4) continues to require that all disclosures under subdivisions (a)(1), (a)(2), and (a)(3) be in writing, signed, and served.

"Shall" is replaced by "must" under the program to conform amended rules to current style conventions when there is no ambiguity.

**Subdivision (b)(1).** In 1978, the Committee published for comment a proposed amendment, suggested by the Section of Litigation of the American Bar Association, to refine the scope of discovery by deleting the "subject matter" language. This proposal was withdrawn, and the Committee has since then made other changes in the discovery rules to address concerns about overbroad discovery. Concerns about costs and delay of discovery have persisted nonetheless, and other bar groups have repeatedly renewed similar proposals for

amendment to this subdivision to delete the "subject matter" language. Nearly one-third of the lawyers surveyed in 1997 by the Federal Judicial Center endorsed narrowing the scope of discovery as a means of reducing litigation expense without interfering with fair case resolutions. Discovery and Disclosure Practice, *supra*, at 44-45 (1997). The Committee has heard that in some instances, particularly cases involving large quantities of discovery, parties seek to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the "subject matter" involved in the action.

The amendments proposed for subdivision (b)(1) include one element of these earlier proposals but also differ from these proposals in significant ways. The similarity is that the amendments describe the scope of party-controlled discovery in terms of matter relevant to the claim or defense of any party. The court, however, retains authority to order discovery of any matter relevant to the subject matter involved in the action for good cause. The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery. The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the attorneys surveyed by the Federal Judicial Center. *See* Discovery and Disclosure Practice, *supra*, at 44. Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

The amendments also modify the provision regarding discovery of information not admissible in evidence. As added in 1946, this sentence was designed to make clear that otherwise relevant material could not be withheld because it was hearsay or otherwise inadmissible. The Committee was concerned that the "reasonably calculated to lead to the discovery of admissible evidence" standard set forth in this sentence might swallow any other limitation on the scope of discovery. Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence. As used here, "relevant" means within the scope of discovery as defined in this subdivision, and it would include information relevant to the subject matter involved in the action if the court has ordered discovery to that limit based on a showing of good cause.

Finally, a sentence has been added calling attention to the limitations of subdivision (b)(2)(i), (ii), and (iii). These limitations apply to discovery that is otherwise within the scope of subdivision (b)(1). The Committee has been told repeatedly that courts have not implemented these limitations with the vigor that was contemplated. *See* 8 Federal Practice & Procedure § 2008.1 at 121. This otherwise redundant cross-reference has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery. *Cf.* Crawford-El v. Britton, 118 S. Ct. 1584, 1597 (1998) (quoting Rule 26(b)(2)(iii) and stating that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly").

**Subdivision (b)(2).** Rules 30, 31, and 33 establish presumptive national limits on the numbers of depositions and interrogatories. New Rule 30(d)(2) establishes a presumptive limit on the length of depositions. Subdivision (b)(2) is amended to remove the previous permission for local rules that establish different presumptive limits on these discovery activities. There is no reason to believe that unique circumstances justify varying these nationally-applicable presumptive limits in certain districts. The limits can be modified by court order or agreement in an individual action, but "standing" orders imposing different presumptive limits are not authorized. Because there is no national rule limiting the number

of Rule 36 requests for admissions, the rule continues to authorize local rules that impose numerical limits on them. This change is not intended to interfere with differentiated case management in districts that use this technique by case-specific order as part of their Rule 16 process.

**Subdivision (d).** The amendments remove the prior authority to exempt cases by local rule from the moratorium on discovery before the subdivision (f) conference, but the categories of proceedings exempted from initial disclosure under subdivision (a)(1)(E) are excluded from subdivision (d). The parties may agree to disregard the moratorium where it applies, and the court may so order in a case, but "standing" orders altering the moratorium are not authorized.

**Subdivision (f).** As in subdivision (d), the amendments remove the prior authority to exempt cases by local rule from the conference requirement. The Committee has been informed that the addition of the conference was one of the most successful changes made in the 1993 amendments, and it therefore has determined to apply the conference requirement nationwide. The categories of proceedings exempted from initial disclosure under subdivision (a)(1)(E) are exempted from the conference requirement for the reasons that warrant exclusion from initial disclosure. The court may order that the conference need not occur in a case where otherwise required, or that it occur in a case otherwise exempted by subdivision (a)(1)(E). "Standing" orders altering the conference requirement for categories of cases are not authorized.

The rule is amended to require only a "conference" of the parties, rather than a "meeting." There are important benefits to face-to-face discussion of the topics to be covered in the conference, and those benefits may be lost if other means of conferring were routinely used when face-to-face meetings would not impose burdens. Nevertheless, geographic conditions in some districts may exact costs far out of proportion to these benefits. The amendment allows the court by case-specific order to require a face-to-face meeting, but "standing" orders so requiring are not authorized.

As noted concerning the amendments to subdivision (a)(1), the time for the conference has been changed to at least 21 days before the Rule 16 scheduling conference, and the time for the report is changed to no more than 14 days after the Rule 26(f) conference. This should ensure that the court will have the report well in advance of the scheduling conference or the entry of the scheduling order.

Since Rule 16 was amended in 1983 to mandate some case management activities in all courts, it has included deadlines for Completing these tasks to ensure that all courts do so within a reasonable time. Rule 26(f) was fit into this scheme when it was adopted in 1993. It was never intended, however, that the national requirements that certain activities be completed by a certain time should delay case management in districts that move much faster than the national rules direct, and the rule is therefore amended to permit such a court to adopt a local rule that shortens the period specified for the completion of these tasks.







"Shall" i
to conform
ambiguity.

§ 26App.1

[1]—Rol

Under the
examination
even when
held to pres
trial at law i
Act and the

Former 28
at common l
court except
the use of in
of parties an
statutes.

The pertin

[1] See 28 U.S.

[2] Ex parte Fi
& Porto Rico S.
the commencem
from the state c
facilitate the pre

[3] National Ca
20 S. Ct. 1021, 4
v. International

[4] Former 28 U
district courts of
in the manner p
Court, however,
not enlarge the gr
in accordance wi
303, 24 S. Ct. 7
(E.D. Mo. 1927).
the parties could
either the state la
(C.C.S.D. Iowa 1

"Shall" is replaced by "must," "does," or an active verb under the program to conform amended rules to current style conventions when there is no ambiguity.

## *B. HISTORICAL ANALYSIS OF RULE 26*

## § 26App.100 Former Practice

### [1]—Role of Federal Statutes

Under the former practice in actions at law there was no right to secure an examination of parties or witnesses before trial solely for discovery purposes, even when the state law so provided. The statutes of the United States[1] were held to prescribe the only procedure to be followed in securing evidence for a trial at law in the federal courts, thus limiting the effect of both the Conformity Act and the Rules of Decision Act.[2]

Former 28 U.S.C. § 635 provided that "the mode of proof in the trial of actions at common law shall be by oral testimony and examination of witnesses in open court except as hereinafter provided." This provision was held to prohibit both the use of interrogatories to be answered by an adverse party,[3] and examination of parties and witnesses in advance of the trial, except when permitted by federal statutes.

The pertinent federal statutes[4] allowed examination in advance of trial upon

---

[1] *See* 28 U.S.C. former §§ 631–655 (1940).

[2] Ex parte Fisk, 113 U.S. 713, 5 S. Ct. 724, 28 L. Ed. 1117 (1885); Gimenes v. New York & Porto Rico S. S. Co. 37 F.2d 168 (S.D.N.Y. 1929) ("It is regrettable that in the period between the commencement of an action on the law side of this court—or the removal of a law action from the state court to this court—and the trial of the case, this court is unable to do much to facilitate the preparation of either party for trial").

[3] National Cash Register Co. v. Leland, 94 F. 502 (1st Cir. 1899), *cert. denied*, 175 U.S. 724, 20 S. Ct. 1021, 44 L. Ed. 337 (1899). This case is cited with approval in *Hanks Dental Association v. International Tooth Crown Co.*, 194 U.S. 303, 309, 24 S. Ct. 700, 48 L. Ed. 989 (1904).

[4] Former 28 U.S.C. § 634 (1940), provided that "in causes pending at law and in equity in the district courts of the United States, it shall be lawful to take the depositions or testimony of witnesses in the manner prescribed by the laws of the State in which the courts are held." The Supreme Court, however, held that this statute merely regulated the mode of taking depositions and did not enlarge the grounds for taking so as to allow examinations before trial for purposes of discovery in accordance with state practice. Hanks Dental Ass'n v. International Tooth Crown Co., 194 U.S. 303, 24 S. Ct. 700, 48 L. Ed. 989 (1904); Reflectolyte Co. v. Edwin F. Guth Co., 31 F.2d 777 (E.D. Mo. 1927). However, when the right to take a deposition existed under the federal statutes, the parties could follow, as to the procedure used in procuring the deposition, at their election either the state law or federal statute. McLennan v. Kansas City, St. J. & C.B.R. Co., 22 F. 198 (C.C.S.D. Iowa 1884).