# In The United States Court of Federal Claims

No. 06-123T

(Filed:  December 21, 2007)

_____

| | | |
|---|---|---|
| EVERGREEN TRADING, LLC, by and through GLEN NUSSDORF and CLAUDINE STRUM on behalf of GN INVESTMENTS, LLC, A Partner Other than the Tax Matters Partner, | * * * * * | Tax suit; Motion to compel; RCFC 26(b)(1); Attorney-client privilege; Application of privilege to tax planning advice; Work product doctrine; Tax practitioner's privilege |
| Plaintiffs, | * * * | – section 7525 of the Internal Revenue Code of 1986 (26 U.S.C.); Documents previously provided to the IRS and state taxing |
| v. | * * * | authority; Waiver based upon reliance of counsel; Communications to/from accountants – the *Kovel* rule; |
| THE UNITED STATES, | * * * | Communications between/among legal representative– the common interest |
| Defendant. | * * * | doctrine; Relevancy; Motion to compel, granted, in part, denied, in part. |

_____

## ORDER

_____

*David DeCoursey Aughtry*, Chamberlain, Hrdlicka, White, Williams & Martin, Atlanta, GA, for plaintiffs.

*Stuart Joel Bassin*, Tax Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Eileen J. O'Connor*, for defendant.

**ALLEGRA, Judge:**

Balancing the interpenetrating factors involved in the assertion of privileges in our federal judicial system is a subtle and complicated process.  The necessity for judicial accommodation between the intersecting pursuit of truth and the protection of confidences, though often expressed in terms of rules of certainty and simplicity, is often applied in a fashion that is neither certain nor simple.  Frequently, striking that balance requires a court to make close, factually-intensive distinctions, particularly in the area of federal income taxation, in which business planning, tax return preparation and legal advice tend to coalesce.  This case is no exception.

In this federal income tax partnership proceeding, pending before the court is defendant's motion to compel the production of documents responsive to one of its requests for production.  Plaintiffs claim, *inter alia*, that the subject documents are privileged.  Following an *en camera*

review of the document in question, and for the reasons that follow, the court **GRANTS**, in part, and **DENIES**, in part, this motion.

## I.    BACKGROUND

Although relatively unimportant in deciding the discovery issues before the court, a brief recitation of the underlying facts of this case aids in setting the context for the decision.

The plaintiffs in this partnership proceeding are Evergreen Trading, LLC (Evergreen), and Glenn Nussdorf and Claudia Strum on behalf of GN Investments, LLC (collectively, the "plaintiffs").  In a Notice of Final Partnership Administrative Adjustment (FPAA), dated September 26, 2005, the Internal Revenue Service (IRS) determined that plaintiffs' tax returns improperly reported the tax treatment of a series of transactions, and, consequently, that various penalties applied to the resulting underpayments of tax.  On February 21, 2006, plaintiffs filed a complaint in this court challenging these determinations.  In particular, they averred that the IRS erred in asserting various of the accuracy-related penalties authorized by section 6662 of the Internal Revenue Code of 1986 (the Code) (26 U.S.C.).  Following the filing of an answer, the court, on June 27, 2006, established a discovery schedule for the case, the completion date of which was eventually extended to April 2, 2007.

During discovery, defendant served plaintiffs with two sets of document requests.  In response to the first, plaintiffs produced about 225 documents totaling about 1100 pages, each numbered in the lower corner with the prefix "NS."  On December 15, 2006, defendant served a second set of requests, which included Request No. 31:  "Please provide all documents bearing the 'NS' prefix which have yet to be provided to the United States in the course of this litigation, including but not limited to pages NS [listing numbers]."  In response, plaintiffs produced a handful of documents and a list of objections, including, *inter alia*, an objection that some of the sought-after documents were protected by the work product privilege.  Plaintiffs, however, did not provide a privilege log with this production.

On April 12, 2007, defendant filed a motion to compel the production of the remaining "NS" documents.  It argued that any privilege-based objections were waived when plaintiffs failed timely to provide the privilege log required by RCFC 26(b)(5).[1]  On April 27, 2007, plaintiffs served defendant with a disk containing some of the documents sought by Request No. 31.  Plaintiffs asserted privilege over the remainder of the NS documents, and provided a

---

[1]  RCFC 26(b)(5) states the following regarding the content of privilege logs:

When a party withholds information . . . by claiming that it is privileged . . . the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

privilege log for those documents.  On April 30, 2007, plaintiffs responded to defendant's motion to compel, asserting various objections including overbreadth, relevancy, attorney-client privilege, and work product privilege.  In a May 14, 2007, reply, defendant argued that plaintiff's objections were procedurally defective, that plaintiff had not established that any documents contain protected work product, and that plaintiff's overbreadth claims were "specious."  This reply included a portion of plaintiff's privilege log as an exhibit.

On May 24, 2007, the court ordered plaintiffs to file a more detailed privilege log that specifically described the nature of the claimed privileges and provided other categories of identifying information about the documents.[2]  On June 7, 2007, plaintiffs filed their revised privilege log.  The court determined that this log still did not contain enough information to enable it to determine the validity of the objections asserted by plaintiffs.  Accordingly, on June 28, 2007, the court ordered plaintiffs to submit for *en camera* review a copy of each of the documents listed in its revised privilege log.[3]  Plaintiffs submitted disks containing these documents on August 3, 2007.

## II.   DISCUSSION

Pursuant to RCFC 37, defendant seeks an order compelling plaintiffs to turn over a range of documents that, in varying degrees, relate to the issues in this matter.

The Federal Circuit has instructed that "[q]uestions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court."  *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984).  In deciding either to compel or quash discovery, this court must balance potentially conflicting goals.  It "'must be careful not to deprive a party of

---

[2]  While an inadequate privilege log may be the basis for disallowing a privilege, *see SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005); *Potter v. United States*, 2002 WL 31409613, at *8 (S.D. Cal. July 26, 2002), such a finding is in the nature of a sanction and, at least in the first instance, should be weighed in terms of the intent of the party producing the defective log and against the harm caused by disclosure of what might otherwise be privileged documents.  *See* Fed. R. Civ. P. 26(b)(5) advisory comm. notes (1993); *see also Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005) (rejecting a *per se* rule under which a privilege is deemed waived if a proper privilege log is not initially produced).  As other courts have done, this court concluded that the best course was to obtain additional information from plaintiff.  *See Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D 530, 534 (N.D. Ill. 2000).  Indeed, even with a log that complied with the rule, the court found it necessary, in this complex matter, to request an *en camera* review of the subject documents.

[3]  The Supreme Court has recognized the important role that *en camera* inspection of disputed documents often plays in determining the existence of a privilege.  *See United States v. Zolin*, 491 U.S. 554, 568-69 (1989); *see also United States v. Nixon*, 418 U.S. 683 (1974).

discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.'" *Heat & Control Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1) advisory comm. notes (1983)); *see also Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995). As the Supreme Court once famously indicated, "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). On the other hand, the Court in *Hickman* cautioned that "discovery, like all matters of procedure, has ultimate and necessary boundaries . . . [L]imitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Id.* at 507-08; *see also Vons Cos. v. United States*, 51 Fed. Cl. 1, 5 (2001); *Planning Research Corp. v. United States*, 4 Cl. Ct. 283, 296 (1983). Encapsulating these considerations, RCFC 26(b)(1), like its Federal rules counterpart, provides that a party may obtain discovery of any matter that: (i) is "not privileged," and (ii) "is relevant to the claim or defense of any party." *See also In re Echostar Comm. Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006); *Vons*, 51 Fed. Cl. at 5.

Plaintiffs assert that the materials requested, but not yet produced, are, indeed, privileged, invoking, alternatively, and in combination, the attorney-client privilege, the work product doctrine and the privilege statutorily-afforded by section 7525 of the Code. Seeking to strike the delicate balance between production and privilege described above, the court must confront issues involving the proper scope of these privileges in the context of communications that occurred along a continuum that began with tax planning, continued through an IRS administrative proceeding, and ultimately ended in this tax litigation. That these questions are important and recurring is apparent from the host of sources discussing them.[4] Nonetheless, as will be seen, many of the issues presented here are matters of first impression in this circuit. Before turning to the consideration of the specific issues presented by the documents that this court has reviewed *en camera*, it is helpful to describe some first principles that ultimately will guide the court in resolving whether those documents are privileged.

### A.     Three Privileges:  Attorney-Client, Work Product and Section 7525.

Like the panels of a triptych, each of the privileges at issue bears some relation to the others. To illustrate this, we begin with the attorney-client and work product privileges.

---

[4] *See* James M. Lynch, "War of the [Tax] Worlds:  Privilege Versus Transparency," 759 PLI/Tax 77 (2007) ("Many members of the tax profession, clients, and Internal Revenue Service . . . disagree about the current state of privilege and privacy in federal income tax matters."); Linda M. Beale, "Tax Advice Before the Return:  the Case for Raising Standards and Denying Evidentiary Privileges," 25 Va. Tax Rev. 583 (2006) (hereinafter "Beale"); Richard Lavoie, "Making a List and Checking it Twice: Must Tax Attorneys Divulge Who's Naughty and Nice?," 38 U.C. Davis L. Rev. 141, 146-48 (2004); Lee A. Sheppard, "Confidentiality and Customer Relations," 99 Tax Notes 1303, 1304-06 (June 2, 2003); Bruce Kayle, "The Tax Adviser's Privilege in Transaction Matters:  A Synopsis and a Suggestion," 54 Tax Law. 509 (2001) (hereinafter "Kayle").

The symbiotic relationship between the attorney-client and work product privileges stems from shared pragmatic and systemic justifications and is reflected in principles common to both. Under Rule 501 of the Federal Rules of Evidence, both privileges are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Both also stand in tension with the desire to avoid suppressing probative evidence and, for that reason, have been narrowly construed – extended only as far as needed to effectuate their utilitarian purposes. *See, e.g.*, *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990); *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982); *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see generally Ullmann v. United States*, 350 U.S. 422, 507 (1956) (Frankfurter, J.) ("Once the reason for the privilege ceases, the privilege ceases."). This "narrow tailoring" principle resonates especially in the context of tax disputes, amplified by the "congressional policy choice in favor of disclosure of all information relevant to a legitimate IRS inquiry." *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984); *see also Cavallaro v. United States*, 284 F.3d 236, 245-46 (1st Cir. 2002); *United States v. Textron*, 507 F. Supp. 2d 138, 146 (D.R.I. 2007). Lastly, parties claiming the benefit of either privilege bear the burden of establishing all the essential elements thereof,[5] a burden that is not "discharged by mere conclusory or *ipse dixit* assertions." *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965).

Yet while the attorney-client and work product privileges are similar and often invoked with respect to the same documents, they diverge in critical regards. And, as will be seen, it is the differences between these privileges that serve ultimately to inform the scope of the third privilege at issue here, that codified in section 7525 of the Code.

### 1.      The Attorney-Client Privilege.

The attorney-client privilege has its roots in Roman law,[6] making it one of the oldest recognized privileges for confidential communications. *United States v. Zolin*, 491 U.S. 554,

---

[5]   *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1099 (9th Cir. 2007); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 821 (7th Cir. 2007); *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015 (1987); *Christofferson v. United States*, 78 Fed. Cl. 810, 815 (2007).

[6]   *See* E. Cleary, McCormick on Evidence § 87 (2d edition 1972). As is recorded in his *In Verrem*, Cicero, while prosecuting the governor of Sicily for corruption and extortion in 70 B.C., could not call the governor's advocate as a witness as that would have violated confidences protected under Roman law. Referring to the advocate, Cicero observed "[i]s it not owing, not to the innocence of your client, but to the exception made by the law, I am prevented from summoning you as a witness on my side on this charge?" Marcus Tullius Cicero, "Second Oration Against Verres," Book Two (70 B.C.); *see also* Max Radin, "The Privilege of Confidential Communication Between Lawyer and Client," 16 Cal. L. Rev. 487 (1927). It was the same Cicero, of course, who once said that "[t]he first duty of a man is the seeking after and the investigation of truth."

562 (1989); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).  It "protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice."  *Genetech, Inc. v. U.S. Intern. Trade Com'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997); *see also Echostar*, 448 F.3d at 1299; *Am. Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987).  The privilege thus encourages "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice."  *Upjohn*, 449 U.S. at 389; *see also Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998); *Hunt*, 128 U.S. at 470 (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

The classic Wigmorean definition of the privilege, which has been adopted in numerous cases, asserts that –

> [w]here legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived.

8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (McNaughton rev. 1961). Breaking this definition into its component parts, courts have held that "in order for the attorney-client privilege to attach, the communication in question must be made:  (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship."  *BDO Seidman*, 492 F.3d at 815; *see also United States v. Bisanti*, 414 F.3d 168, 171 (1st Cir. 2005); *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984); *Deseret Mgmt. Corp. v. United States*, 76 Fed. Cl. 88, 90 (2007).[7]

---

[7]  Although it ultimately was not adopted, the rule describing the attorney-client privilege promulgated by the Supreme Court in 1972 as part of the Proposed Federal Rules of Evidence has been recognized "as a source of general guidance regarding federal common law principles." *In re Grand Jury Investigation*, 399 F.3d 527, 532 (2d Cir. 2005); *see also* 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.02 (Joseph M. McLaughlin, ed., 2d ed. 2006).  Proposed Rule 503 was particularly instructive in summarizing the types of communications that may be subject to the privilege –

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between

Waivers of the privilege "come in various sizes and shapes," *In re Keeper of Records (XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003), but often derive from conduct or words that negate one or more of the elements of the privilege. *See Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990). Thus, for example, the voluntary disclosure of privileged communications to third parties (who are neither agents of the attorney nor the client) belies the notion that the communications are made in confidence and generally destroys the privilege. *Id.*; *see also Genentech*, 122 F.3d at 1415. Along these lines, it is generally stated that if a party waives the privilege as to a particular communication, it also is deemed to waive the privilege as to all communications involving the same subject matter.[8] But, as the Federal Circuit has cautioned, this rule must not be too liberally invoked lest it swallow the privilege. For one thing, courts have distinguished between situations in which the waiver occurred knowingly and in court, for example, through the invocation of a defense, versus situations in which the waiver arose inadvertently in an extrajudicial setting.[9] In addition, courts applying this rule have been careful not to define the "subject matter" of communications too broadly. In this regard, the Federal Circuit has advised – "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James*, 412 F.3d at 1349-50; *see also In re Seagate Tech.*, 497 F.3d at 1372; *In re Keeper of the Records (XYZ Corp.)*, 348 F.3d at 23; *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 255-56 (6th Cir. 1996).[10] Hence, just because a party discloses a communication

---

representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

*See* Proposed Fed. R. Evid. 503(b), 56 F.R.D. 183, 236 (1972); *see also BDO Seidman,* 492 F.3d at 814-15 (relying on this proposed rule).

[8]  *See, e.g., In re Seagate Technology*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (quoting *Fort James v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) ("The widely applied standard for determining the scope of a waiver . . . is that the waiver applies to all other communications relating to the same subject matter."); *see also Echostar*, 448 F.3d at 1299.

[9]  *See, e.g., United States v. Jacobs*, 117 F.3d 82, 89-90 (2d Cir. 1997) ("[T]he extrajudicial disclosure of a portion of an attorney-client conversation . . . cannot in itself waive the privilege as to the rest of the conversation."); *Long-Term Capital Holdings v. United States,* 2002 WL 31934139, at *3 (D. Conn. Oct. 30, 2002) (quoting *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987) ("the rule that 'testimony as to part of a privileged communication, in fairness, requires production of the remainder' does not apply when the privilege-holder or his attorney makes extrajudicial disclosures that are not subsequently placed at issue during the litigation")).

[10]  One court described the following factors as being relevant in this context:

Among the factors which appear to be pertinent in determining whether disclosed and undisclosed communications relate to the same subject matter are: 1) the

covering one aspect of its case does not mean that it has waived the privilege as to communications involving the rest.  It follows, *a fortiori*, that because a taxpayer has revealed otherwise protected communications regarding one aspect of the tax planning that went into a transaction does not necessarily mean that it has waived the privilege as to all aspects of that planning.

Reflecting a somewhat different slant, some commentators have asserted that the attorney-client privilege offers little in the way of protection to tax planning advice.  *See, e.g.*, Beale, 25 Va. Tax. Rev. at 634-35.  There is some support for this view.  For example, it has long been held that the preparation of tax returns is an accounting service, not the provision of legal advice, and that documents used in both preparing tax returns and litigation are not privileged. *See, e.g., United States v. Frederick*, 182 F.3d 496, 500-01 (7th Cir. 1999), *cert. denied*, 528 U.S. 1154 (2000); *see also United States v. Bornstein*, 977 F.2d 112, 116 (4th Cir. 1992); *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir.), *cert. denied*, 454 U.S. 862 (1981).  Further, as a corollary to the rule described above, it is generally recognized that where a party relies on or discloses the advice of counsel concerning the tax consequences of a transaction, it waives the attorney-client privilege not only as to the disclosed information, but also as to the details underlying that information.  Thus, in *In Re Pioneer Hi-Bred Int'l*, 238 F.3d 1370 (Fed. Cir. 2001), the Federal Circuit, applying Eighth Circuit law, held that a putative patent licensee's disclosure of and reliance on the advice of counsel concerning the tax consequences of a merger waived the licensee's attorney-client privilege with respect to documents forming the basis for the advice.  Commenting on documents received from two law firms concerning the tax consequences of a merger, the court held that "[t]he disclosure of that advice and reliance on that advice waived the attorney-client privilege with respect to all documents which formed the basis for the advice, all documents considered by counsel in rendering that advice, and all reasonably contemporaneous documents reflecting discussions by counsel or others concerning that advice." *Id*. at 1374-75; *see also In re G-I Holdings, Inc.*, 218 F.R.D. 428, 431-32 (2003) (holding that for

---

general nature of the lawyer's assignment; 2) the extent to which the lawyer's activities in fulfilling that assignment are undifferentiated and unitary or are distinct and severable; 3) the extent to which the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity; 4) the circumstances in and purposes for which disclosure originally was made; 5) the circumstances in and purposes for which further disclosure is sought; 6) the risks to the interests protected by the privilege if further disclosure were to occur; and 7) the prejudice which might result if disclosure were not to occur.

*United States v. Skeddle*, 989 F. Supp. 917, 919 (N.D. Ohio 1997).  Several courts have emphasized that, to fall under the scope of the subject-matter waiver rule, the other documents must "be directly related to the [disclosed subject]."  *United States v. (Under Seal)*, 748 F.2d 871, 875 n.7 (4th Cir. 1984); *see also In re Grand Jury Proceedings*, 78 F.3d at 255-56; Jennifer A. Hardgrove, "Scope of Waiver of Attorney-Client Privilege:  Articulating a Standard that Will Afford Guidance to Courts," 1998 U. Ill. 643, 662 (1998).

this rule to apply, "the asserting party [must] put the protected information at issue by making it relevant to the case").

But, this is a far cry from saying that every communication from an attorney to his or her client is discoverable so long as it relates in any fashion to the preparation of a return. Cases holding that communications occurring during tax preparation are unprotected generally involve taxpayers asserting a defense or taking some other public position directly based upon its reliance upon counsel. In those cases, the courts have been hesitant to allow a taxpayer to use "the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *Echostar*, 448 F.3d at 1303; *see also Fort James Corp.*, 412 F.3d at 1349. But, where there is no direct and public reliance on counsel's advice, the "sword and shield" analogy fails and communications offering tax advice or discussing tax planning have been held to be "legal" communications protected by the attorney-client privilege. Thus, for example, the Seventh Circuit held that where representation during an audit consists of "merely verifying the accuracy of a return," it is unprotected, but that if that communication instead "deal[s] with issues of statutory interpretation or case law" being raised in the context of the audit, "the lawyer is doing lawyer's work and the attorney-client privilege may attach." *Frederick*, 182 F.3d at 502.[11] These rulings, which recognize that preparing a return is not all a

------

[11] The Federal Circuit said much the same thing in *Pioneer Hi-Bred Int'l*, 238 F.3d at 1374:

> A party does not forego the attorney-client privilege with respect to merger negotiations by disclosing the existence of the merger, the negotiations between the parties concerning the merger, or the property rights of the respective parties, and a waiver occurs only when a party relies on or discloses advice of counsel or other privileged information in connection with the merger.

*See also United States v. Abrahams*, 905 F.2d 1276, 1284 (9th Cir. 1990), *overruled on other grounds*, *United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997) ("communications made to acquire legal advice about what to claim on tax returns may be privileged"); *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("we would be reluctant to hold that a lawyer's analysis of the soft spots in a tax return and his judgment on the outcome of the litigation on it are not legal advice"); *Textron*, 507 F. Supp. 2d at 147 ("counsel's opinions regarding [return] items that might be challenged . . . and assessment of . . . prevailing in any ensuing litigation are protected by attorney-client privilege"); *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1082 (N.D. Cal. 2002) ("Determining the tax consequences of a particular transaction is rooted virtually entirely in the law. The advisor must analyze the tax code, IRS rulings, decisions of the Tax Court, etc. Communications offering tax advice or discussing tax planning or the tax consequences of alternative business strategies are 'legal' communications."); *Boca Investerings Ptshp. v. United States*, 31 F. Supp. 2d 9, 12-13 (D.D.C. 1998) (finding that portions of a memorandum were protected that communicate "the lawyer's opinion as to the technical soundness of the contemplated transactions").

matter of mechanics and mathematics, serve to effectuate one of the main purposes of the privilege, that is, to encourage clients to "make well-informed legal decisions and conform [their] activities to the law." *Echostar*, 448 F.3d at 1300-01.  Even though tax planning holds the potential for mischief, on balance, seeking such advice serves the public's interest in making it more likely than not that the tax law will be followed.[12]  In short, what was said by the Federal Circuit in *In re Regents of University of California*, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996), surely holds true for tax matters – "[p]ersons seek legal advice and assistance in order to meet legal requirements and to plan their conduct; such steps serve the public interest in achieving compliance with law and facilitating the administration of justice, and indeed may avert litigation." *See also Upjohn*, 449 U.S. at 389; *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984).[13]

### 2.    Work Product Doctrine.

Compared to its ancient relative, the work product doctrine is a mere babe, having been born 60 years ago in the Supreme Court's seminal decision in *Hickman*.  There, Justice Murphy, writing on behalf of the majority, rejected "an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." 329 U.S. at 510.  Noting that "it is essential that a lawyer work with a certain degree of privacy," he reasoned that if discovery of the material sought were permitted "much of what is now put down in writing would remain unwritten." *Id.* at 510-11.  "An attorney's thoughts, heretofore inviolate, would not be his own," Justice Murphy stated –

Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal

---

[12]  Certainly, the public considerations underlying the attorney-client privilege apply to tax planning even if it is designed to reduce tax obligations.  As was said in *Gregory v. Helvering*, 293 U.S. 465, 469 (1935):  "[t]he legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."  *See also Knetsch v. United States*, 364 U.S. 361, 365 (1960); *Comm'r of Internal Revenue v. Newman*, 159 F.2d 848, 850-51 (2d Cir. 1947) (Hand, J., dissenting) ("Over and over courts have said that there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible.").

[13]  In this circuit, obvious parallels exist between the treatment of legal opinions rendered in support of tax positions and opinions rendered on the validity of patents.  In the latter instance, both the Federal Circuit and its predecessor have made clear that the opinions may, in appropriate circumstances, receive protection under the attorney-client privilege.  *See, e.g.*, *Ledex, Inc. v. United States*, 172 U.S.P.Q. 538, 539 (Ct. Cl. 1972); *Am. Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 746 (Fed. Cir. 1987); *see also Sperry v. Florida*, 373 U.S. 379 (1963).

profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id*. at 511.[14] The "strong public policy" underlying this doctrine has been repeatedly reaffirmed by the Supreme Court. *See, e.g.*, *Upjohn Co.*, 449 U.S. at 398; *United States v. Nobles*, 422 U.S. 225, 236-40 (1975), and has found a home in Federal Rule of Civil Procedure 26(b)(3). That rule states that documents "prepared in anticipation of litigation or for trial" are discoverable only upon a showing of "substantial need" for the materials and "undue hardship" if they are not produced. *See also* RCFC 26(b)(3). Even where this showing has been made, however, the rule provides that the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id*.; *see also Adlman*, 134 F.3d at 1197.[15]

Critically, "[r]ule 26(b)(3) does not in so many words address the temporal scope of the work product immunity," *Fed. Trade Comm'n, v. Grolier, Inc.*, 462 U.S. 19, 25 (1983), that is, *inter alia*, it does not precisely define when the privilege attaches. Nonetheless, some dimensions of this timing question are reasonably well honed. For example, it is well-recognized that for the rule to apply, litigation need not already have commenced or be imminent; rather, litigation must merely be a real possibility at the time the documents in question are prepared. *See, e.g.*, *AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 445 (2007); *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000); *see also Senate of Puerto Rico v. U.S. Dept. of Justice*, 823 F.2d 574, 586 n. 42 (D.C. Cir. 1987). For this purpose, litigation has been understood to include proceedings before administrative tribunals if they are adversarial in nature. *See Southern Union Co. v. Southwest Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002); *United States v. Am. Telephone & Telegraph Co.*, 86 F.R.D. 603, 627 (D.D.C. 1979). Finally, the drafters of the rule plainly stated that "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided for by this subdivision." *See* Rule 26(b)(3) advisory comm. notes (1970); *see also Holmes v. Pension Union Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d. Cir. 2000); *United States v. KPMG, LLP*, 237 F. Supp. 2d 35, 41 (D.D.C. 2002).

---

[14]   *See also In re Seagate Tech., LLC*, 2007 WL 2358677, at *9 (Fed. Cir. Aug. 20, 2007); *Echostar*, 448 F.3d at 1301 (work product doctrine "encourages attorneys to write down their thoughts and opinions with the knowledge that their opponents will not rob them of the fruits of their labor"); *Genentech*, 122 F.3d at 1415.

[15]   In the words of the Federal Circuit, this rule "only allows discovery of 'factual' or 'non-opinion' work product and requires a court to protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative." *EchoStar*, 448 F.3d at 1302 (internal quotations omitted); *see also Seagate Technology*, 2007 WL 2358677, at *9 ("Whereas factual work product can be discovered solely upon a showing of substantial need and undue hardship, mental process work product is afforded even greater, nearly absolute, protection."); *Deseret Mgmt.*, 76 Fed. Cl. at 93.

There is considerably less agreement as to when litigation is "anticipated" for purposes of the rule.  While courts have applied various formulations, *see* Kayle, *supra,* at 529, two tests have emerged from the pack.  Under the "primary purpose" test employed by the Fifth Circuit, as well as some district courts, documents are viewed as being prepared in anticipation of litigation "as long as the primary motivating purpose behind the creation of a document was to aid in possible future litigation." *El Paso*, 682 F.2d at 542; *see also In re Kaiser Aluminum and Chemical Co.*, 214 F.3d 586, 593 (5th Cir. 2000).  On the other hand, several circuits have employed a simple causation test under which the relevant inquiry, though seemingly trite, is whether a given document was prepared or obtained "because of" the prospect for litigation.  *See Maine v. Dept. of the Interior*, 298 F.3d 60, 68 (1st Cir. 2002) (adopting this test and holding that "we must conclude that in the instant case it was error to require the [Department of Interior] to demonstrate that the withheld documents were created primarily for litigation purposes in order to claim the work-product privilege"); *Adlman*, 134 F.3d at 1202 (documents should be deemed prepared for litigation and within the scope of the Rule if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation") (emphasis in original); *see also Textron*, 2007 WL 2458325, at *9; Wright & Miller, 7 Federal Practice & Procedure § 2024, at 343 (1994).

In the court's view, the latter test – the "because of" test – which enjoys wide support in the circuits,[16] seems preferable for several reasons.  First, it more closely tracks the language of the rule, which says nothing of whether a document is produced "primarily" for litigation, but rather is triggered so long as anticipating litigation was one of the purposes for which the document was prepared.[17]  Moreover, as has been observed by the Second Circuit, "[f]raming the inquiry as whether the primary or exclusive purpose of the document was to assist in litigation threatens to deny protection to documents that implicate key concerns underlying the work-

---

[16]  *See United States v. Roxworthy*, 457 F.3d 590, 599 (6th Cir. 2006) (following *Maine* and *Adlman*); *In re Grand Jury Subpoena*, 357 F.3d 900, 907-08 (9th Cir. 2004); *E.E.O.C. v. Lutheran Social Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999); *Martin v. Bally's Park Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir.), *cert. denied*, 484 U.S. 917 (1987); *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983); *Chevron Texaco Corp.*, 241 F. Supp. 2d at 1082 ("[E]xcept where a document would have been generated in the normal course of business even if no litigation was anticipated, the work product doctrine can reach documents prepared 'because of litigation' even if they were prepared in connection with a business transaction or also served a business purpose.").

[17]  *See Adlman*, 134 F.3d at 1198 ("We believe that a requirement that documents be produced primarily or exclusively to assist in litigation in order to be protected is at odds with the text . . . . of the Rule."); *In re Grand Jury Subpoena*, 357 F.3d at 908 ("[t]he question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation" but rather requires consideration of the "circumstances surrounding the document's preparation").

product doctrine." *Adlman*, 134 F.3d at 1199.  Indeed, such an approach could unreasonably deny the protection to "dual purpose" documents generated in making the decision whether to enter into a transaction based upon tax litigation concerns, even though such documents could reveal an attorney's litigating strategies and assessment of legal vulnerabilities – precisely the type of discovery that the Supreme Court refused to permit in *Hickman*.  *See Adlman*, 134 F.3d at 1199; *In re Grand Jury Subpoena*, 357 F.3d at 908; *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987).  Finally, this relatively straightforward causation test does not depend unduly upon a party's subjective intent.  Rather, to meet this test, a party must "have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."  *In re Sealed Case*, 146 F.3d at 884; *see also Roxworthy*, 457 F.3d at 594.  Accordingly, as most other courts have held, this court finds that the "because of" test is the proper way to determine whether a document was prepared "in anticipation of litigation" and thus is eligible for protection under RCFC 26(b)(3).

      Finally, there is, again, the matter of waiver.  As noted by the court in *Textron*, "[s]ince the work product privilege serves a purpose different from the attorney-client or tax practitioner privileges, the kind of conduct that waives the privilege also differs."  2007 WL 2458325, at *12.  The purpose of the attorney-client privilege is to guarantee confidentiality between attorney and client – a purpose that is inconsistent with the notion of disclosing the same information to most third parties.  But, the work product doctrine is designed only to prevent a potential adversary from gaining an unfair advantage.  As such, "only disclosing material in a way inconsistent with keeping it from an adversary waives the work product protection."  *United States v. Mass. Inst. of Tech. (MIT)*, 129 F.3d 681, 687 (1st Cir. 1997); *see also Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, 237 F.R.D. 176, 183 (N.D. Ill. 2006) (privilege may be waived by disclosure to third parties "'in a manner which substantially increases the opportunity for potential adversaries to obtain the information'" (quoting *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003)).  This means, in particular, that an individual or entity may not disclose documents to a Federal government agency that is a potential adversary in litigation and then assert the work product privilege in seeking to protect the disclosure of the same documents in litigation involving that or another Federal agency.  *See, e.g.*, *United States v. Bisanti*, 414 F.3d 168, 172 (1st Cir. 2005); *MIT*, 129 F.3d at 683 (documents disclosed to the Defense Contract Audit Agency not protected by work product doctrine in subsequent IRS summons enforcement action); *see also Westinghouse Elec. Corp. v. Rep. of Phillippines*, 951 F.2d 1414, 1426-27 (3d Cir. 1991).

### 3.      The Tax Practitioner Privilege in 26 U.S.C. § 7525.

      Plaintiffs further invoke the tax practitioner privilege contained in 26 U.S.C. § 7525, a provision of relatively-recent vintage that must be examined through the prism of the privileges discussed above.

      Prior to 1998, the Supreme Court repeatedly held that "no confidential accountant-client privilege exists under federal law."  *Couch v. United States*, 409 U.S. 322, 335 (1973); *see also*

*United States v. Arthur Young & Co.*, 465 U.S. 805, 817 (1984); *Fisher v. United States*, 409 U.S. 322 (1973). In 1998, however, Congress enacted section 7525 of the Code, Internal Revenue Service Restructuring and Reform Act of 1998 (the 1998 Act), Pub. L. No. 105-206, § 3411(a), 112 Stat. 685, 750 (1998), which provides:

> With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

26 U.S.C. § 7525(a)(1). This provision may be asserted in "any noncriminal tax proceeding in Federal court brought by or against the United States." *Id.* at § 7525(a)(2). The term "federal authorized tax practitioner" is defined as "any individual who is authorized under Federal law to practice before the Internal Revenue Service," to the extent that practice is regulated under 31 U.S.C. § 330. *Id.* at § 7525(a)(3)(A). The latter reference includes accountants and enrolled agents authorized to practice before the IRS. Protected "tax advice" means "advice given by an individual with respect to a matter which is within the scope of the individual's authority to practice" as a federally authorized tax practitioner. *Id.* at § 7525(a)(3)(B). Tracking the general approach in this area, several cases have held that "tax advice" does not include communications regarding "tax return preparation." *See, e.g.*, *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003); *Frederick*, 182 F.3d at 502.

"Because the scope of the tax practitioner-client privilege depends on the scope of the common law protections of confidential attorney-client communications," *BDO Seidman*, 337 F.3d at 810, the exact parameters of this statutory privilege are not expressly defined by its language. The legislative history of section 7525 aids in mapping the contours of this privilege. For one thing, that history reveals that the attorney-client privilege does not apply where an attorney is acting as a return preparer. In this regard, the House Conference Committee Report summarized current law thusly –

> It does not apply in situations where the attorney is acting in other capacities. Thus, a taxpayer may not claim the benefits of the attorney-client privilege simply by hiring an attorney to perform some other function. For example, if an attorney is retained to prepare a tax return, the attorney-client privilege will not automatically apply to communications and documents generated in the course of preparing the return.

H.R. Conf. Rep. 105-599, at 267 (1998). Further describing current law, this report continued – "The privilege of confidentiality also does not apply where the communication is made for further communication to third parties. For example, information that is communicated to an attorney for inclusion in a tax return is not privileged because it is communicated for the purpose of disclosure." *Id.* The report then made clear that the statute extends the attorney-client

-14-

privilege to other tax practitioners, principally accountants, with all the limitations historically associated with that doctrine.  *See id.* at 268.  "For example," the report noted, "if a taxpayer or federally authorized tax practitioner discloses to a third party the substance of a communication protected by the privilege, the privilege for that communication and any related communications is considered to be waived to the same extent and in the same manner as the privilege would be waived if the disclosure related to an attorney-client communication."  *Id*.

This same history leaves little doubt that, while section 7525 affords a limited form of the attorney-client privilege to tax practitioners, it does not likewise extend the work product doctrine.  The latter extension more arguably would have been the case had the bill, as originally proposed in the House, been enacted.  Thus, as introduced, House Bill 2676 provided:

> In any noncriminal proceeding before the [IRS], the taxpayer shall be entitled to the same common law protections of confidentiality with respect to tax advice furnished by any qualified individual as the taxpayer would have if such individual were an attorney.

H.R. 2676, 105th Cong., § 341 (Oct. 21, 1997).  But, the Senate Finance Committee significantly ratcheted this language down, constraining it so that the section 7525 privilege would apply only to "communications."  H.R. 2676 (Apr. 22, 1998) (as reported by the Senate Finance Comm. with an amendment).  The accompanying report confirms that the modified bill extended to tax practitioners only a form of the attorney-client privilege.  *See also* S. Rep. 105-174, at 70 (1998) ("The provision extends the present law attorney-client privilege of confidentiality to tax advice that is furnished to a client-taxpayer . . . by any individual who is authorized under Federal law to practice before the IRS .");  *id.* (provision extends the "right to privileged communications").  And, it was this more limited version of the statute that was adopted by the Conference Committee and became law, thereby belying any notion that lurking within the privilege established by section 7525 is some extension of the work product doctrine.  *See* H. Conf. Rep. 105-599, at 268 (1998) ("[t]his provision relates only to matters of privileged communications.").  This history, in short, reveals that the word "communications" in the statute is no idle term, a view that has led virtually every court to consider the issue to conclude that section 7525 "does not protect work product."  *Frederick*, 182 F.3d at 502.[18]  This court likewise so concludes.

Because the privilege established by section 7525 is largely coterminous with the attorney-client privilege, waivers of the former privilege occur on the same terms as would apply

---

[18]  *See also BDO Seidman, LLP*, 492 F.3d at 827 ("[t]he tax practitioner privilege protects those communications which would be privileged if made to an attorney"); *Bisanti*, 414 F.3d at 170 n.1 (section 7525 "extends to communications that would be privileged were they between a taxpayer and an attorney"); *BDO Seidman*, 337 F.3d at 810 ("the § 7525 privilege is no broader than that of the attorney-client privilege"); *Doe v. Wachovia Corp.*, 268 F. Supp. 2d 627, 637-638 (W.D.N.C. 2003) (section 7525 "does not protect work product"); *KPMG, LLP*, 237 F. Supp. 2d at 39.

to the latter.  *See Textron, Inc.*, 507 F. Supp. 2d at 151; *United States v. Arthur Andersen, LLP*, 273 F. Supp. 2d 955, 958 (N.D. Ill. 2003); *see also BDO Seidman*, 337 F.3d at 810 ("the §7525 privilege is no broader than that of the attorney-client privilege").

###    B.    Application of Privilege to Particular Categories of Documents.

        With this background, the court now turns to the results of its *en camera* review of the documents in question.  Those documents can be broken down in various ways, for example, in terms of the identifying features of the communications or documents involved, or, perhaps, in terms of the privilege being invoked.  The following segments address issues particularly raised by what the court views as logical subsets of these documents – though more specific than the preliminary issues addressed above, these discussions, nonetheless, are cross-cutting, in that they, at times, apply to more than one category of documents.  To further guide the parties, the accompanying Chart A more specifically summarizes the results of the court's *en camera* review of the individual documents and cross-references the discussions herein, as relevant.[19]

###    1.    Documents previously provided to the IRS
        and the State of New York.

        a.  Plaintiffs object to releasing anew documents that they claim were already submitted to the IRS during the audit of their returns.  But, this objection comes largely sans citation to rule or other authority.  To be sure, Federal Rule of Evidence 403 provides that relevant evidence may be excluded it is cumulative, but this rule governs the admittance of evidence at trial and not discovery.  *See United States v. Rosario-Peralta*, 175 F.3d 48, 55 n.4 (1st Cir. 1999).  RCFC 26(b), of course, limits discovery to matters that are "relevant" to the claim or defense of any party and permits the court to limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  But, unless burdensomeness is demonstrated, the fact that a discovery request may lead to the discovery of documents already possessed does not necessarily bar that discovery.[20]  That is because "[t]he

---

        [19]  In addition to the specific cross-references found in the chart, the court, in makings its rulings, also relies on the preceding general discussions of the three privileges at issue.

        [20]  *See, e.g., Burns v. Bank of America*, 2007 WL 1589437, at *15 n.13 (S.D.N.Y. June 4, 2007); *VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, 1999 WL 386949, *6 (D. Kan. Jun. 8, 1999) ("Asking for information already within the possession of the party seeking the discovery does not of itself make the interrogatory unduly burdensome or oppressive."); *Cook v. Rockwell Int'l Corp.*, 161 F.R.D. 103, 105 (D. Colo. 1995) ("The fact that the moving party is already in possession of documents it seeks to obtain by inspection, is not necessarily a sufficient reason for denying discovery."); *Ft. Washington Resources, Inc. v. Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994) ("it is not a bar to the discovery of relevant material that the same material may be in the

purpose of the discovery rules is not only to elicit unknown facts, but also to narrow and define the issues, and for this purpose it is often necessary to use discovery about known facts."  8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2014 (1994); *see also Cook*, 161 F.R.D. at 105.  Indeed, in this case, as in others, there remains the possibility that discovery will reveal versions of documents different from those already in possession.  That said, the number of document pages involved here is relatively small and plaintiffs have not – and, indeed, could not – support a claim that the production of these documents would be either expensive or burdensome.  Accordingly, they have not shown that any of these documents should be excluded in their entirety because assertedly they were previously provided to the IRS.[21]

Yet, as plaintiffs hint, various cases hold that the work product doctrine may shield from discovery documents created by third-parties "where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be."  *Matter of Grand Jury Subpoenas*, 959 F.2d at 1166.  This rule is often traced to *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985), *cert. denied*, 474 U.S. 903 (1985), where the Third Circuit found that "the selection and compilation of documents by counsel in this case in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."  Though not universally accepted, the *Sporck* rule has been applied in a number of circuits.  *See In re Grand Jury Subpoenas*, 318 F.3d 379, 385 (2d Cir. 2003); *Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676 (2d Cir. 1987); *cf. In re San Juan DuPont Hotel Fire Lit.*, 859 F.2d 1007, 1018 (1st Cir. 1988).  This exception to the normal production of documents, however, is "narrow" and requires a showing of "a real, rather than speculative, concern that the thought processes of [] counsel in relation to pending or anticipated litigation would be exposed."  *Gould*, 825 F.2d at 680; *see also Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006).  No such showing has been made by plaintiffs here – either in their *en camera* submissions or in responding to defendant's motion – at least to the extent that would protect entire documents.

---

possession of the requesting party or obtainable from another source").  Some older cases hold that discovery of documents may not be obtained when the requester already possesses those documents.  *See, e.g. Korman v. Shull*, 184 F. Supp. 928, 935 (D.C. Mich. 1960).  But those cases hinge on former Rule 34 of the Federal Rules of Civil Procedure, which permitted discovery only when "good cause" was shown therefor.  That, of course, is no longer the case.  Indeed, there is no indication here that the request for these documents, which was made in the context of seeking a broader set of documents, was in bad faith or intended to harass plaintiffs.  *Cf. Hendler v. United States*, 952 F.2d 1364, 1380-81 (Fed. Cir. 1991).

[21]  A few of the documents that were attached to various communications here were sent by the IRS to one or more of the plaintiffs.  While the court sees little potential benefit in defendant obtaining these documents from plaintiffs, plaintiffs have offered no basis for protecting these documents and, accordingly, the court determines that they also should be produced.

b.  However, plaintiffs' arguments in this regard are more compelling as to certain aspects or features of the documents *sub judice*.  For example, they object to producing the documents in question because they contain a supposedly unique, sequential numbering system that plaintiffs' counsel asserts it employed in organizing the documents in question.  Of course, plaintiffs have already produced a host of documents that contain such "NS" numbers; it was, in fact, that production that teased defendant into requesting the documents corresponding to the pages that were omitted.  Nonetheless, the court agrees that the numbering system itself could reveal aspects of plaintiffs' counsel's understanding of the case and thus constitutes work product for which defendant has made no showing whatsoever of necessity.  Other cases have reached similar conclusions and have barred the production of documents that were organized in a particular fashion by an opposing counsel.[22]  Accordingly, the court will permit plaintiffs to redact those numbers from any documents ordered produced herein.[23]

c.  Within this general category, it is also appropriate to distinguish between documents that were, at some point, provided to the IRS and certain transmittal letters and memoranda associated with the subsequent transmission of those documents to other parties.  The latter documents, which were not provided to the IRS, fall into two broad categories.  Some contain absolutely no factual or legal content and merely identify the sender, the recipient, the list of documents transferred (with varying specificity) and the date of the transfer.  Arguably, these bare-bone documents are protected by the work product doctrine as they serve only to reveal the date that plaintiffs' counsel first obtained the documents.  *See Beinin v. Center for Study Popular Culture*, 2007 WL 832962, at *3 (N.D. Cal. Mar. 16, 2007).  But, even if this were true, plaintiffs have waived their privilege in this regard as the essence of the identifying information in question was provided to defendant in their privilege logs.  *Cf. id* at *6 (holding that a party was not required to list the dates that documents were transmitted to counsel in its privilege log

---

[22]  *See James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982) (barring production of binders which "contain[ed] a small percentage of the extensive documents reviewed by plaintiff's counsel"); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613, 616 (S.D.N.Y. 1977) (barring the production of notebooks that represented "counsel's ordering of the facts"); *see also In re Atlantic Financial Mgmt. Secs. Lit.*, 121 F.R.D. 141, 143 (D. Mass. 1988) ("An attorney's choice of material does, to some extent, reveal his or her view of what is important in the case."); *compare Washington Bancorporation v. Said*, 145 F.R.D. 274, 276 (D.D.C. 1992) (refusing to apply this rule where 20,000 documents had been selected for scanning); *Hambarian v. Comm'r of Internal Revenue*, 118 T.C. 565, 571 (2002) (refusing to apply this rule where 100,000 pages of documents were selected from a larger universe of documents).

[23]  The documents provided by plaintiffs to the court for *en camera* review include duplicates of certain documents that will be produced under the court's ruling.  Because production of such duplicates would only serve to reveal the "NS" numbers assigned to them and because the court has held that such numbers are protected and need not be revealed, there is no reason whatsoever to order plaintiffs to produce these duplicates to defendant.

because "the information is akin to a cover letter that might have accompanied a document collection in the pre-email era, and it is therefore part of the work product to which Beinin is not entitled."). To the extent that the cover letters and memoranda reveal the instructions of plaintiffs' counsel or contain other legal or factual analysis, they, under the analysis mapped out above, are undoubtedly protected by either the attorney-client privilege or the work product doctrine and should not be produced.[24]

d.  But, the court hastens to add that the same conclusion does not obtain as to the documents that were attached to these transmittals. As was well explained by one district court –

> stapling one privileged document to a non-privileged document does not cloak the non-privileged material with protection from discovery. Therefore, to the extent that privileged fax or other cover sheets are attached to non-privileged documents that fall into other enumerated categories, the non-privileged documents must be produced.

*In re Gabapentin Patent Lit.*, 214 F.R.D. 178, 187 (D.N.J. 2003); *see also McCook Metals, LLC v. Alcoa, Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000) (non-privileged letter to third party attached to privileged document was not privileged); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney."). These cases simply reflect a corollary to the broader rule that a "pre-existing document which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." *Fisher*, 425 U.S. at 403-04.

e.  At the risk of carting coal to Newcastle, one final observation is in order: Plaintiffs seemingly overlook the most obvious implication of their assertion that most of these documents were already provided to the IRS – that is, that the release of those documents to their adversary waived any privileges that otherwise might be associated with those documents. *See Bradley v. Comm'r of Internal Revenue*, 209 Fed. Appx. 40 (2d Cir. 2006) (attorney-client privilege waived where taxpayer "had disclosed those documents to his accountant, who subsequently disclosed the documents to the IRS during an audit"); *see also MIT*, 129 F.3d at 684-86 (disclosure to government audit agency waived privilege with respect to documents sought by IRS); *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, 240 F.R.D. 78, 86

---

[24] *See, e.g., Lugosch v. Congel*, 2006 WL 931687, at *31 (N.D.N.Y. Mar. 7, 2006); *BancBoston Financial Co. v. Gould*, 1988 WL 76888, at *2 (N.D. Ill. July 14, 1988); *see also Mordesovitch v. Westfield Ins. Co.*, 244 F. Supp. 2d 636, 648 (S.D. W. Va. 2003) (holding, under West Virginia law, that cover letter containing theories and opinions about litigation were protected under work product doctrine); *Valero Transmission, L.P. v. Dowd*, 960 S.W. 2d 642, 645 (Tex. 1997) (holding that cover letter from lawyer to client was privileged because it gave specific legal advice).

(S.D.N.Y. 2006) (documents disclosed to the IRS were not privileged under the work product doctrine; disclosure inconsistent with maintaining secrecy against opponents).  The same conclusion – that the attorney client and work product privileges were waived – applies as to documents that plaintiffs previously provided to the State of New York's Department of Taxation.  *See Unocal Corp. v. United States*, 2005 WL 3736952, at *3 (N.D. Cal. Dec. 23, 2005) ("[t]he protections vis-a-vis disclosure to the IRS in this matter were waived by the production to the State of California").  Therefore, even assuming *arguendo* that somewhere hidden in these documents are nuggets of confidential information, it remains that those documents are not entitled to protection from discovery here.

### 2.      Documents provided by plaintiffs to their counsel and vice-versa.

Plaintiffs also seek to protect a variety of communications that they sent to their various attorneys and vice-versa.  As to these documents, it is, at the outset, again important to distinguish between the communications themselves and pre-existing documents attached to those communications.

a.  This is an opportune point to reemphasize that, under the attorney-client privilege, it is the communication itself that is protected – "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."  *Upjohn*, 449 U.S. at 395-95; *see also PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 994 (8th Cir. 1999).  Put differently, "'[t]he client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporate a statement of such fact into his communication to his attorney.'"  *Upjohn*, 449 U.S. at 396 (quoting *Philadelphia v. Westinghouse Elec. Corp*. 205 F. Supp. 830, 831 (E.D. Pa. 1962)).  Thus, as discussed above, documents do not acquire protection under the attorney-client privilege merely because they were transferred from client to attorney.  *See Fisher*, 425 U.S. at 403-04; *Grant v. United States*, 227 U.S. 74, 79-80 (1913).[25]  Likewise, the work product doctrine does not shield from discovery documents created by third parties.  *See Nobles*, 422 U.S.

---

[25]  *See also United States v. Davis*, 636 F.2d 1028, 1041 (5th Cir. 1981) ("[D]ocuments created outside the attorney-client relationship should not be held privileged in the hands of the attorney unless otherwise privileged in the hands of the client, lest the client immunize . . . evidence merely by depositing it with his attorney."); *cert. denied*, 454 U.S. 862 (1981); *Bouscher v. United States*, 316 F.2d 451, 457 (8th Cir. 1963) ("The delivery of the papers to the attorney does not create the privilege when it did not theretofore exist."); *see also* Paul R. Price, Attorney-Client Privilege in the United States, § 5.1 (2d ed. 2007); Paul R. Rice, "Attorney-Client Privilege:  Continuing Confusion about Attorney Communications, Drafts, Pre-existing Documents, and the Source of the Facts Communicated," 48 Am. U. L. Rev. 967, 989-94 (1999) (surveying additional cases).

at 238-39 & n.13; *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, and Nov. 1, 1991*, 959
F.2d 1158, 1166 (2d Cir. 1992).[26]

b.  As to a few documents that themselves represent communications between plaintiffs
and their counsel, another issue is lurking – whether plaintiffs have waived their privileges as to
all or some of these documents by relying upon the advice of counsel or other tax professionals.
In this regard, it is critical that plaintiffs' complaint challenges the imposition of various
"accuracy-related penalties" under section 6662(a) of the Code.  It avers that those penalties were
imposed, in part, based upon section 6662(b) of the Code, which imposes a penalty to the portion
of any underpayment which is attributable to "[n]egligence or disregard of rules or regulations,"
or "any substantial understatement of income."  26 U.S.C. § 6662(b)(1), (2).

Counsel's advice clearly could play a role in whether either penalty is sustained.
Regarding the negligence penalty in section 6662(b)(1), section 6662(c) states that –

> For purposes of this section, the term "negligence" includes any failure to make a
> reasonable attempt to comply with the provisions of this title, and the term
> "disregard" includes any careless, reckless or intentional disregard.

26 U.S.C. § 6662(c).  The decisional law makes clear that good faith reliance upon the advice of
counsel or a qualified accountant may negate a finding that taxpayer acted negligently or in
disregard of rules or regulations.[27]  Good faith reliance upon the advice of counsel or a qualified

---

[26]  Some of the documents eventually obtained by plaintiffs' attorney in this case fall into
this category.  They involve communications between plaintiffs and non-legal officers in
Evergreen and related businesses, as well as public documents.  Under the circumstances
presented, neither of these types of documents are privileged.  *See, e.g., Computer Network Corp.
v. Spohler*, 95 F.R.D. 500, 502 (D.D.C. 1982) (communication from one corporate officer to
another was not privileged); *In re Grand Jury Subpoena Duces Tecum*, 391 F. Supp. 1029, 1034
(S.D.N.Y. 1975) (same); *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d 1039, 1043 (11th
Cir. 1990) (public documents are not privileged); *United States v. Gasparik*, 141 F. Supp. 2d
361, 369 (S.D.N.Y. 2001) (same); *see generally Navigant Consulting, Inc. v. Wilkinson*, 220
F.R.D. 467, 477 (N.D. Tex. 2004) (documents created for a business purpose are not protected
even though the "information developed . . . may be helpful in legal proceedings").

[27]  *See, e.g., Shaw v. Comm'r of Internal Revenue*, 2002 WL 187515 (U.S. Tax Ct. Feb. 6,
2002); *Schwalbach v. Comm'r of Internal Revenue*, 111 T.C. 215, 230-31 (1998); *Ewing v.
Comm'r of Internal Revenue*, 91 T.C. 396, 423-24 (1988), *aff'd without published opinion*, 940
F.2d 1534 (9th Cir. 1991); *see also United States v. Boyle*, 469 U.S. 241, 250 (1985) (construing
similar language in 26 U.S.C. § 6651(a)(1)).  The Tax Court has held that to rely on this defense,
the taxpayer must establish that:  (i) the adviser has sufficient expertise to justify reliance; (ii) the
taxpayer provided necessary and accurate information to the adviser, and (iii) the taxpayer
actually relied in good faith upon the adviser's judgment.  *See, e.g., Schwalbach*, 111 T.C. at

accountant also could play a role in reducing the understatement that may trigger the substantial understatement penalty in section 6662(b)(2).  In this regard, section 6662(d)(1)(B) reduces the understatement by the portion attributable to "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment."  Furthermore, section 6664(c)(1) of the Code, which plaintiffs invoke in their complaint, provides that "[no] penalty shall be imposed . . . with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and . . . the taxpayer acted in good faith with respect to such portion."  *See Green v. Comm'r of Internal Revenue*, 2007 WL 3276847, at *10 (5th Cir. Nov. 7, 2007).  Certainly, advice from counsel or a qualified accountant could establish that there "was" substantial authority" or "reasonable cause" for the treatment of an item on a return or, at the least, that the taxpayer  acted in "good faith.  *See* 26 C.F.R. § 1.6664-4(b)(1) ("Reliance on . . . professional advice . . . constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith."); *id.* at § 1.6664-4(c) (reliance on tax advice is reasonable if the taxpayer provided the adviser with necessary and accurate information and if the taxpayer demonstrates actual, good faith reliance on the adviser's judgment).  Various cases, indeed, have predicated findings in this regard upon the totality of the nature and content of the communications that occurred between the taxpayer and its advisers.[28]

Providing thoughtful guidance on this point, the Tax Court has held that the attorney-client privilege is impliedly waived where a taxpayer "affirmatively raise[s] a claim that can only be effectively disproven through discovery of attorney-client communications."  *Bernardo v. Comm'r of Internal Revenue*, 104 T.C. 677, 691 (1995); *see also Johnston v. Comm'r of Internal Revenue*, 119 T.C. 27, 36 (2002).  Here, plaintiffs' complaint suggests that they intend to rely upon the professional advice that they received in seeking to overturn various of the penalties asserted by the IRS.  Thus, plaintiffs aver that Evergreen filed its 1999 tax return "in reliance on

---

230-31; *Ellwest Stereo Theatres v. Comm'r of Internal Revenue*, 70 T.C.M. (CCH) 1655, 1660 (1995).

[28]  *See, e.g., Green*, 2007 WL 3276847, at *10 (upholding the Tax Court's decision that section 6664(c)(1) did not apply where "although Green had assistance in preparing his return in 1997 and 1998, there was no evidence as to what Green told the preparer, what the preparer told Green, and whether or not Green's reliance on any advice from the preparer was reasonable."); *King v. Comm'r of Internal Revenue*, 2007 WL 3193173, at *3 (11th Cir. Oct. 31, 2007) ("Reliance on a tax advisory is not reasonable, however, where the taxpayer has failed to adequately disclose all necessary information affecting the tax evaluation") (quoting *Ellwest Stereo*, 70 T.C.M. at 1660); *Thompson v. Comm'r of Internal Revenue*, 499 F.3d 129, 134 (2d Cir. 2007) (most important factor in assessing the existence of reasonable cause is the extent of the taxpayer's effort to assess it proper tax liability); *Hansen v. Comm'r of Internal Revenue*, 471 F.3d 1021, 1029-30 (9th Cir. 2006) (penalty upheld were taxpayer failed to consult independent tax advisor prior to investment); *Klamath Strategic Inv. Fund, LLC v. United States*, 472 F. Supp. 2d 885, 900-01 (E.D. Tex. 2007).

qualified tax professionals who were in possession of all pertinent facts," and that they "believed when the experts opined that the position taken was more likely than not the correct position." They further aver that Evergreen and its partners employed "well-qualified advisors" to evaluate the proper tax treatment of the items at issue and that Mr. Nussdorf, in particular, "secured tax opinions" from his "respected tax advisors" who informed him that the tax treatment was more likely than not correct. Moreover, plaintiffs explicitly allege that there was "substantial authority" for the treatment of all items on Evergreen's 1999 return and that each partner had a "reasonable basis" for believing the treatment of each item was proper. Nonetheless, these references fall short of an explicit invocation of a reliance upon counsel defense and plaintiffs have not formally invoked such a defense in any of their other filings to date. To clarify this matter, the court shall require the production of certain documents unless by the specified date of production, plaintiffs expressly disavow any reliance-upon-counsel defenses to the accuracy penalties at issue.

### 3.   Communications to and from accountants.

Another category of documents here are those in which an accountant is either the sender or the recipient. Plaintiffs assert that many of these documents are privileged because they were provided to its counsel by various accountants who either were hired by their counsel or otherwise were aiding their counsel in providing plaintiffs with legal advice. Although plaintiffs do not directly cite this case in support of their privilege claims, it would appear that their theory hinges heavily on Judge Friendly's opinion in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) – indeed, several of the documents at issue specifically invoke that case in footers.

a. In *Kovel*, the Second Circuit held that the attorney-client privilege can protect communications between a client and his accountant, or the accountant and the client's attorney. Recognizing that an accountant can play a role analogous to an interpreter, the court reasoned that "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without help of others," the attorney-client privilege must include all the persons who act as the attorney's agents." 296 F.2d at 921 (quoting 8 Wigmore, § 2301, at 583). By way of further rationale, *Kovel* explained that "the presence of an accountant, whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege" when "the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Id*. at 922. Although never adopted by the Federal Circuit, this *Kovel* rule, as well as various corollaries thereto, enjoy wide support in a majority of the circuits.[29]

_____

[29] *See United States v. Bornstein*, 977 F.2d 112, 116-17 (4th Cir. 1992); *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982); *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *United States v. Cote*, 456 F.2d 142, 144 (8th Cir. 1972); *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973); *Linde Thomson Longworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1514-15 (D.C. Cir. 1993); *First Fed. Sav. Bank of Hegewisch v. United States*, 55 Fed. Cl. 263, 266 (2003); *see also Pioneer Hi-Bred Int'l*, 238 F.3d at 1374 (Federal Circuit applying the privilege law of the Eighth Circuit in a patent case).

b.  This rule, however, has limits.  For one thing, subsequent decisions in the Second Circuit and elsewhere make clear that "an attorney, merely by placing an accountant on her payroll, does not, by this action alone, render communications between the attorney's client and the accountant privileged."  *Cavallaro*, 284 F.3d at 247; *see also Gurtner*, 474 F.2d at 299.  Rather, *Kovel* applies only "when the accountant's role is to clarify communications between attorney and client" – when he, in other words, acts "as a translator or interpreter of client communications."  *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *see also United States v. Adlman*, 68 F.3d 1495, 1499-1500 (2d Cir. 1995) (hereinafter "*Adlman I*").  In particular, a communication between an attorney and an accountant does not become shielded by the attorney-client privilege simply because "the communication proves important to the attorney's ability to represent the client."  *Ackert*, 169 F.3d at 139; *see also Hickman*, 329 U.S. at 508.  Further, in *Kovel*, the Second Circuit made clear that for the privilege to attach, the communication must be made "for the purpose of obtaining legal advice," adding that "[i]f what is sought is not legal advice but only accounting service . . . , or if the advice sought is the accountant's rather than the lawyer's, no privilege exists."  *Kovel*, 296 F.2d at 922; *see also Cavallero*, 284 F.3d at 247; *Adlman I*, 68 F.3d at 1500; *United States v. Brown*, 478 F.2d 1038, 1040 (7th Cir. 1973); *In re G-I Holdings, Inc.*, 218 F.R.D. 434-35; *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1072 (N.D. Cal. 2002) ("*Kovel* explicitly excludes the broader scenario in which the accountant is enlisted merely to give her own *advice* about the client's situation." (Emphasis in original)).

c.  It bears further noting that *Kovel* and most of its progeny deal only with the situation where an accountant was acting as an attorney's agent and not where an accountant is acting as the client's agent.  *See Kovel*, 296 F.2d at 922 n.4; *In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1191 (4th Cir. 1991).  In the latter situation, communications by the accountant to the attorney are viewed as equivalent to communications being made by the client to the attorney and hence are potentially covered by the attorney-client privilege.  *See, e.g., id.*  However, that conclusion does not necessarily shield such documents from discovery.  If the documents are unprotected by privilege in the hands of the accountant or if the privilege is somehow waived other than by the communication from the accountant to the client's attorney, the documents may, nonetheless be discoverable.  *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 2122440, at *4 (D. Kan. Jul. 20, 2007) (*Kovel* did not protect accountant's compilation of records that were subsequently provided to attorney); *In re Hyde*, 222 B.R. 214, 220 (Bankr. S.D.N.Y. 1998), *rev'd on other grounds*, 235 B.R. 539 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1323 (2d Cir. 2000) ("Neither *Kovel* nor any other case permits a party to hide unprivileged documents by given them to his attorney or forensic accountant."); *see also ECDC Environ. v. N.Y. Marine and Gen. Ins. Co.*, 1998 WL 614478, at *8 (S.D.N.Y. Jun. 4, 1998) (underlying factual information cannot be protected under extension of *Kovel*).  The latter rule, of course, mirrors the rule that applies to attorneys – a party simply cannot prevent the disclosure of papers that would otherwise be discoverable by the simple expedience of transferring them to either an attorney or an accountant.

d.  Various communications in this category involve correspondence between one or more of plaintiffs or their counsel and one of plaintiffs' accountant, Lawrence H. Cohen.  On August 18, 2004, Mr. Cohen was hired by plaintiffs' counsel to perform accounting services with respect to Mr. Nussdorf and Ms. Strum, including analyses of their records and the possible preparation of tax returns for them.  The agreement designated Mr. Cohen as an agent of plaintiffs' counsel for these purposes.  Some of the correspondence between plaintiffs and Mr. Cohen, as well as between Mr. Cohen and plaintiffs' counsel, predates this agency agreement.  In none of this correspondence does it appear that Mr. Cohen is performing the role of an interpreter on behalf of the plaintiffs, so as to invoke the *Kovel* rule.  Nor does it appear that these communications meet the requirements of section 7525 as they were not related to Mr. Cohen's provision of tax advice.  Instead, this correspondence generally serves only to accompany various documents relating to plaintiffs' investments in the transactions at issue and otherwise to their 1999 and 2000 taxable years.  Accordingly, no portion of these document packages appears to be privileged.

e.  Other of the documents in question involve communications between one or more of plaintiffs, Mr. Cohen and plaintiff's counsel that occurred after the agency agreement took effect.  Apart from *Kovel*, it would appear that any exchanges that occurred between Mr. Cohen and plaintiffs' counsel after the agreement took effect are potentially protected by the work product doctrine.  This result proceeds directly from RCFC 26(b)(3), which extends the work product protection to materials prepared "by or for [the] party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Indeed, in *Nobles*, the Supreme Court emphasized that the work product doctrine does not merely protect an attorney's thought processes because –

> attorneys must often rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial.  It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

422 U.S. at 238-39; *see also* Wright & Miller, *supra*, at § 2024 ("Under Rule 26(b)(3), it is clear that all documents and tangible things prepared by or for the attorney of the party from whom discovery is sought are within the qualified immunity given to work product . . .").  Since this rule applies to materials produced for a party's attorney by an outside accountant,[30] it assuredly applies where that assistance is supplied by an agent hired by the same attorney, including an accountant.  *See In re ContiCommodity Servs., Inc., Securities Litigation*, 123 F.R.D. 574, 577 (N.D. Ill. 1988) ("To the extent, however, that [an accountant] was an agent of the customer's attorneys involved in an investigation for purposes of the district court suit, documents he prepared for that purpose are protected by the work product immunity."); *see also United States*

---

[30]  *See Black & Decker Corp. v. United States*, 219 F.R.D. 87, 91 (D. Md. 2003); *McEwen v. Digitran Sys., Inc.*, 155 F.R.D. 678, 683 (D. Utah 1994); *see also Adlman*, 134 F.3d at 1204.

*v. Bell*, 95-1 U.S.T.C. ¶ 50,006 (N.D. Cal. 1994) (privileges would apply to reports prepared by accountant if retained by attorney as non-testifying expert); *cf. Cavallaro*, 284 F.3d at 248.

f.  Other types of documents that can be viewed as falling generally within this category include communications between:  (i) other accountants who worked for the Mr. Nussdorf/Ms. Strum over time and their investment advisers (and between other representatives of plaintiffs and the same investment advisers); (ii) various accountants working simultaneously for Mr. Nussdorf/Ms. Strum and their family business, Quality King Distributors; and (iii) Mr. Cohen and the IRS, including, in particular, responses and supplemental responses to so-called "Information Document Requests" (IDRs) made by the IRS.  As far as the court can see, none of these documents is protected by any of three privileges discussed herein.  Nor is there any indication that any of the affected parties were acting in concert with plaintiffs' counsel or any other protected individual for the purpose of facilitating legal advice.  Rather, each of these communications were made privy to one or more parties as to whom plaintiff could not expect confidentiality:  their investment advisers,[31] accountants not involved in the provision of tax advice,[32] and the IRS itself.[33]  Accordingly, plaintiff must produce these documents.

---

[31] *See Ackert*, 169 F.3d at 139-40 (communication between an attorney and an investment-advisor about a client's prospective transaction was not privileged); *In re John Doe Corp.*, 675 F.2d 482, 488 (2d Cir. 1982) (privilege was waived when inclusion of accountant in communications between client and legal counsel "was sparked by Accountant's responsibilities in conducting the audit, not by Doe Corp.'s seeking of legal advice requiring the aid of an accountant"); *Urban Box Office Network, Inc. v. Interfase Mgrs., L.P.*, 2006 WL 1004472, at *4 (S.D.N.Y. Apr. 18, 2006) ("simply because financial consultants are employed to assist a company in a restructuring transaction does not mean that their communications with the company's attorneys are privileged. What is relevant is whether their communications with the attorneys were made in confidence for the purpose of the client obtaining legal advice from its counsel"); *Export-Import Bank v. Asia Pulp & Paper Co. Ltd.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005) (where advisor was "major participant in APP's financial affairs, not a mere interpreter" between the client and its counsel, attorney-client communications that included investment advisor were not privileged); *In re Consol. Lit. Concerning Int'l Harvester*, 666 F.Supp. 1148, 1157 (N.D. Ill. 1987) ("the attorney-client communication disclosed to Lehman Brothers lost any privileged character they might have had"); *cf. Stafford Trading, Inc. v. Lovely*, 2007 WL 611252 (N.D. Il. Feb. 22, 2007) (applying a principle to investment advisers akin to the *Kovel* rule).

[32]  *Couch*, 409 U.S. at 335 (there is no accountant-client privilege under federal law); *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981).

[33]  *See* discussion, *infra*, Part II, 1.

4.      **Communications between and among legal representatives:**
        **the Common Interest Rule.**

a. Others of the communications at issue involve contact between one or more of the plaintiffs or their representatives and attorneys other than their counsel in this case. As noted above, the disclosure of a document to a third party can effectuate a waiver of the attorney-client privilege and sometimes the work product privilege. Of course, no such waiver occurs if both parties to a communication represent the same client, albeit in different capacities. *See EEOC v. Texas Hydraulics, Inc.*, 2007 WL 3355426, at *6 (E.D. Tenn. Oct. 31, 2007); *Buckner v. IRS*, 25 F. Supp. 2d 893, 900 (N.D. Ind. 1998); *In re FiberMark, Inc.*, 330 B.R. 480, 500 (Bankr. D. Vt. 2005). Nor, as we will see, does a waiver occur if the client or its representative is communicating with attorneys representing individuals or an entity with shared legal interests. The latter concept, known as "common interest doctrine," "extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances." *BDO Seidman*, 492 F.3d at 815. A few more words on this concept are warranted.

The "common interest doctrine" applies "where the parties undertake a joint effort with respect to a common legal interest," and is "limited strictly to those communications made to further an ongoing enterprise." *BDO Seidman*, 492 F.3d at 816; *see Genentech*, 101 F.3d at 1389; *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997). Generally speaking, the scope of this doctrine is limited to a common legal interest to which the parties formed a common strategy. Communications covered by this doctrine can take several forms. For example, "the common interest doctrine applies when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest." *Hanson v. U.S. Agency for Intern. Dev.*, 372 F.3d 286, 292 (4th Cir. 2004); *see also Cavallaro*, 284 F.3d at 249-50; *In re Lindsey*, 158 F.3d 1263, 1282 (D.C. Cir. 1998); *B.E. Meyers & Co., Inc. v. United States*, 41 Fed. Cl. 729, 732 (1998). Similarly, the "'privilege applies to communications made by the client or the client's lawyer to a lawyer representing another in a matter of common interest.'" *Cavallaro*, 284 F.3d at 249-50 (quoting 3 Weinstein's Federal Evidence, § 503.21[2] (2d ed. 2002))*; see In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997) ("If two or more clients with a common interest in a litigated or a non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged . . . that relates to the matter is privileged as against third persons.") (quoting what is now Restatement (Third) of the Law Governing Lawyers § 76(1)). In either instance, the communications are privileged as against third parties, whether or not there is actual litigation in progress. *See United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir. 1996).[34]

---

[34] In *Cavallaro*, the First Circuit analyzed the interaction between the common-interest doctrine and the rule enunciated in *Kovel* thusly –

The common-interest doctrine prevents clients from waiving the attorney-client privilege when attorney-client communications are shared with a third person who

b.  In the case *sub judice*, plaintiffs invoke the common interest doctrine as to communications between: (i) counsel for plaintiffs' business and their counsel in this litigation; and (ii) plaintiffs and a law firm representing BDO Seidman in a case involving similar transactions to those at issue.  In the court's view, both sets of communications are protected by the common interest extension of the attorney-client privilege as they were designed to further a joint or common defense.  Again, however, this ruling does not apply to the attachments to these communications, to the extent that those documents themselves are not privileged (*e.g.*, copies of tax returns, or communications received from the IRS).

## C.    Relevancy Objections.

Lastly, plaintiffs object to the production of various documents on the grounds that they involve taxpayers and taxable years not in issue in this case, making them, in plaintiffs' view, irrelevant to the subject matter involved in this case within the meaning of RCFC 26(b)(1).  Consistent with the goal of promoting the "just and complete resolution of disputes," the Federal Circuit has stated, "[r]elevancy for purposes of Rule 26 is broadly construed."  *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993); *see also Centurion Indus., Inc. v. Warren Steurer and Assocs.*, 665 F.2d 323, 326 (10th Cir. 1981); *Jade Trading, LLC v. United States*, 65 Fed. Cl. 188, 191 (2005).  Moreover, as RCFC 26(b)(1) further emphasizes, relevant information for purposes of discovery is information "reasonably calculated to lead to the discovery of admissible evidence."  *Brown Bag Software v. Symantic Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *see also Eggleston v. Chicago Journeymen Plumbers' Local Union*, 657 F.2d 890, 903 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017 (1982); *JZ Buckingham Investments, LLC v. United States*, 78 Fed. Cl. 15, 19 (2007).  Accordingly, in the context of a case such as this, all that is required to satisfy the relevancy requirement of RCFC 26(b)(1) is that the requested item may throw light upon the correctness or incorrectness of the taxpayers' returns and the IRS' assertion of penalties in reaction thereto.

Plaintiffs' relevancy concerns are largely made *in vacuo*.  The court's *en camera* review suggests that all of the documents that contain references to other taxpayers also contain

---

has a common legal interest with respect to these communications, for instance, a co-defendant.  The doctrine does not extend to prevent waiver when an accountant, not within the *Kovel* doctrine, is made privy to the attorney-client communications.  In such an instance, the accountant does not share an interest in receiving legal advice from the lawyer and cannot logically be said to have an interest in common with the represented party or parties.  Under *Kovel*, we know that when a client, a lawyer, and an accountant are present, the accountant's presence will destroy the privilege if the accountant is not "necessary, or at least highly useful, for the effective consultation between the client and the lawyer." 296 F.2d at 922.

*Cavallaro*, 284 F.3d at 250.

references to plaintiffs, making those documents, as a whole, directly relevant to the case at hand. Plaintiffs have provided the court with no legal basis upon which to excise the names of the unrelated taxpayers from what otherwise are relevant documents, nor have any of those taxpayers appeared to object to the production of these documents. *See Howell v. City of New York*, 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) (refusing to allow a party "to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant."); *Medtronic Sofamor Dankek, Inc. v. Michelson*, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002) (noting that the Federal Rules of Civil Procedure recognize redaction only for privileged material).[35] Moreover, because the unrelated taxpayers plainly were involved in the same or similarly structured transactions as plaintiffs, it is far from clear that the facts concerning their participation are irrelevant here. Even less tenable are plaintiffs' objections predicated upon references in certain documents to their taxable years other than those directly at issue. Certainly, it is possible that events in those taxable years could impact the treatment of tax items in years directly before the court, particularly given the penalties at issue and the potential defenses thereto. *See generally*, *United States v. Doyle*, 2007 WL 2670057, at *6 (D. Kan. Sept. 7, 2007); *Calamari v. United States*, 2003 WL 345852, at *5 (E.D. Mich. Jan. 23, 2003). Despite various opportunities, plaintiffs have not shown otherwise. In sum, because the court concludes that, with one obvious exception,[36] the information sought is reasonably calculated to lead to the discovery of admissible evidence, it finds that plaintiffs' relevancy objections are not well taken.

## III.    CONCLUSION

This court need go no further. Based on the foregoing, ad as reflected in the attached Appendix A, the court finds as follows:

1.    On or before January 11, 2008, the following documents (or the designated portions thereof) shall be produced by plaintiff to defendant:  **2, 2a, 2b, 2c, 2d, 2e, 2f, 2g, 2h, 2i, 2j, 2k, 3, 3a, 3b, 3c, 3d, 3e, 3f, 3g, 4, 5, 7a, 7b, 7c, 7d, 8a, 8b, 8c, 8d, 8e, 8f, 8g, 8h, 8i, 8j, 8k, 8l, 8m, 8n, 8o, 8p, 8q, 8r, 8s, 8t, 8u, 8v, 8w, 8x, 8y, 8z, 8aa, 8bb, 8cc, 8dd, 8ee, 8ff, 8gg, 8hh, 8ii, 8jj, 8kk, 8ll, 8mm, 8nn, 8oo, 8pp, 8qq, 8rr, 8ss, 8tt, 8uu, 8vv, 10, 11a, 12 (second page through end), 12a, 13 (second e-mail through end), 15 (second e-mail through end); 17 (second e-mail through end), 19 (second e-mail through end), 22 (second e-mail on pages ending 8778 and 8814 and remainder), 23.1, 23.2, 23.4, 24**

---

[35] Notably, there is no specific claim or indication that these materials include "return information" so as to implicate the anti-disclosure rules of section 6103 of the Code. *Cf. Vons Cos.*, 51 Fed. Cl. at 16-17.

[36] That exception is a bill for postage. The court perceives no possible reason why this document would be relevant to any issue in this case and thus declines to order its production.

**(second page through end), 26a, 26b, 26d, 26f, 27a, 28a, 28b, 28c, 28d, 29.1, 29.3, 29.4, 29.5, 29.5(e), 29.5(f), 29.5(h), 29.8, 29.9, 30, 31 (second page through end), 33a, 33b, 33c, 33d, 33e, 33f, 34, and 35 (second page through end).**  Plaintiff shall excise from these document the "NS" numbers that were contained on the versions of these documents produced for *en camera* review.

2.      On or before January 11, 2008, the following documents (or the designated portions thereof) shall be produced by plaintiff to defendant unless on or before that date, plaintiff files with the court a document disavowing any intention to present any form of a reliance upon counsel defense in this case:  **9 and 29.5(g)**. Plaintiff shall excise from the documents produced the "NS" numbers that were contained on the versions of these documents produced for *en camera* review.

3.      The following documents (or the designated portions thereof) are appropriately subject to one or more privileges and shall not be produced: **1, 6, 6a, 6b, 6c, 6d, 7, 8, 11, 12 (first page), 12b, 12 (first e-mail), 14, 15 (first e-mail), 16, 17 (first e-mail), 18, 19 (first-email), 20 , 22 (first e-mail on NS pages ending 8778 and 8814), 23, 23.3, 23.5, 23.6, 23.7, 24 (first page), 25, 26, 26c, 26e, 27, 28, 29, 29.2, 29.5(a), 29.5(b), 29.5(c), 29.5(d), 29.6, 29.7, 31 (first page), 32, 33, and 35 (first page).**

4.      Because neither party has fully prevailed herein, the court will not order the payment of reasonable expenses.  *See* RCFC 26(a)(4).

5.      On or before January 18, 2008, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule, as appropriate.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

**APPENDIX A**[37]

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 1 | 10/14/05 | Letter | Representation, including representation relating to persons and entities and years other than those involved in this proceeding ("other taxpayers and other years") | I.R.C. §7525 Attorney-Client; Work Product privileges. | Protect, II.B.3.e. |
| 2 | 08/10/04 | Letter with 11 attachments | Letter conveys information from CPA, in his role as hired assistant, to Counsel in preparation for litigation.<br><br>Includes information relating to other taxpayers and other years. | I.R.C. §7525 Attorney-Client; Work Product privileges. Beyond scope of RCFC 26(b); Irrelevant; Pertains to other years; Includes information for clients other than those involved in this proceeding.<br><br>Transmits documents already in possession of the Internal Revenue Service, and, subject to disclosure rules of IRC 6103(h)(4), is available to Defendant's counsel from his own client. | Produce, II.B.3.d.; II.C. |
| 2a | 10/17/01 | Facsimile | Other taxpayers and other years | I.R.C. §7525 Attorney-Client; Work Product privileges. Beyond scope of RCFC 26(b); Irrelevant; Pertains to other years; Includes information for clients other than those involved in this proceeding.<br><br>Documents already in possession of the Internal Revenue Service, and, subject to disclosure rules of IRC 6103(h)(4), available to Defendant's counsel from his own client. | Produce, II.B.3.f.; II.C. |

---

[37] At various points in this appendix, the court has no option but to refer to last four digits of relevant NS numbers in its ruling, because no other alternative is available for identifying particular pages of certain documents to be protected versus produced.

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 2b | 9/25/01 | Email | Other taxpayers and other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f.; II.C. |
| 2c | 9/25/01 | Email with attachment | Other taxpayers and other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f.; II.C. |
| 2d | 11/26/01 | Memo | Other taxpayers and other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f.; II.C. |
| 2e | 10/22/01 | Memo | Other taxpayers and other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f., II.C. |
| 2f | 11/1/01 | Email | Other taxpayers and other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f.; II.C. |
| 2g | 4/9/02 | | Other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f.; II.C. |
| 2h | 11/9/01 - 12/31/01 | | Other taxpayers and other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f.; II.C. |
| 2i | 11/9/01 - 12/31/01 | | Other taxpayers and other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f.; II.C. |
| 2j | 11/9/01 - 12/31/01 | | Other taxpayers and other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f.; II.C. |
| 2k | 11/9/01 - 12/31/01 | | Other taxpayers and other years | *See* Privilege grounds stated in No. 2a, above. | Produce, II.B.3.f.; II.C. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 3 | 11/10/04 | | Letter is a conveyance of information by CPA in his role as hired assistant to Counsel in preparation for litigation.<br><br>The attached documents to the CPA's letter relate to individual taxpayer information for taxable years beyond the taxable years ended December 31, 2000. | I.R.C. §7525 Work Product privileges.<br><br>Beyond scope of RCFC 26(b);<br>Irrelevant;<br>Pertains to other years; Includes information for clients other than those involved in this proceeding.<br><br>Defendant or its client already possess all documents with the exception of the cover letter to the attached documents. The cover letter is privileged.<br><br>The underlying documents themselves are already in possession of the IRS. Therefore, the only information to be gleaned is when and the fact that undersigned counsel received the specific documents. These matters are subject to the work product privilege, are irrelevant and not discoverable.<br><br>Since the attached documents are already in possession of the Internal Revenue Service, subject to the disclosure rules of IRC 6103(h)(4), defense counsel may obtain them from his client. | Produce, II.B.1.c.; II.C. |
| 3a | | | Arlene Nussdorf's response to IDR 2. | *See* Privilege grounds stated in No. 3, above. | Produce, II.B.1.; II.C. |
| 3b | | | Stephen and Alicia Nussdorf's response to IDR 1. | *See* Privilege grounds stated in No. 3, above. | Produce, II.B.1.; II.C. |
| 3c | | | Arlene Nussdorf's first supplemental response to IDR 2. | *See* Privilege grounds stated in No. 3, above. | Produce, II.B.1.; II.C. |
| 3d | | | Ruth Nussdorf's second supplemental response to IDR 2. | *See* Privilege grounds stated in No. 3, above. | Produce, II.B.1.; II.C. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 3e | | | Arlene Nussdorf's second supplemental response to IDR 2. | *See* Privilege grounds stated in No. 3, above. | Produce, II.B.1.; II.C. |
| 3f | | | Stephen and Alicia Nussdorf's first supplemental response to IDR 1. | *See* Privilege grounds stated in No. 3, above. | Produce, II.B.1.; II.C. |
| 3g | | | Glenn Nussdorf' and Claudine Strum's first supplemental response to IDR 4. | *See* Privilege grounds stated in No. 3, above. | Produce, II.B.1.; II.C. |
| 4 | 01/28/05 | Letter with attachments | Letter is a conveyance of information by CPA in his role as hired assistant to Counsel in preparation for litigation.<br><br>The document attached to the CPA's letter related to individual taxpayer information for the years ended December 31, 1999, and December 31, 2000 (supplemental response to IDRs). | The cover letter is privileged by reason of I.R.C. §7525 Attorney-Client; Work Product privileges.<br><br>The attachments are subject to the work product privilege.<br><br>The underlying documents are already in possession of the IRS and therefore, subject to the disclosure rules of IRC 6103(h)(4), Defendant's counsel may obtain them from his client.<br><br>To the extent that Defendant's counsel requested them with specific document requests, they have already been produced.<br><br>Therefore, the only information to be gleaned from this production is when undersigned counsel received the specific documents and the fact that counsel received them.  These matters are subject to work product privilege, are irrelevant and not discoverable. | Produce, II.B.1.; II.C. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 5 | 10/28/04 | Letter | Letter is a conveyance of information by CPA in his role as hired assistant to Counsel in preparation for litigation.<br><br>The documents attached to the CPA's letter relate to individual taxpayer information for the years ended December 31, 1999, and December 31, 2000 (response to IDRs). | The cover letter is privileged by reason of I.R.C. §7525 Attorney-Client; Work Product privileges.<br><br>The attachments are subject to the work product privilege.<br><br>The underlying documents are already in possession of the IRS and therefore, subject to the disclosure rules of IRC 6103(h)(4), Defendant's counsel may obtain them from his client.<br><br>To the extent that Defendant's counsel requested them with specific document requests, they have already been produced.<br><br>Therefore, the only information to be gleaned from this production is when undersigned counsel received the specific documents and the fact that counsel received them. These matters are subject to work product privilege, are irrelevant and not discoverable. | Produce, II.B.1.; II.C. |
| 6 | 5/28/04 | Letter with 4 attachments | Letter is conveyance of information by client (through general counsel) to counsel for Plaintiffs.<br><br>The attached documents concern agreed orders and correspondence relating to privilege issues in litigation in District Court. | Attorney-Client; Work Product privileges.<br><br>Beyond scope of RCFC 26(b); Irrelevant | Protect; II.B.4. |
| 6a | 5/13/04 | Letter with attachment | Litigation | *See* Privilege grounds stated in No. 6, above. | Protect, II.B.4. |
| 6b | 5/13/04 | Letter with attachment | Litigation | *See* Privilege grounds stated in No. 6, above. | Protect, II.B.4. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 6c | 5/13/04 | Letter with attachment | Litigation | *See* Privilege grounds stated in No. 6, above. | Protest, II.B.4. |
| 6d | 8/13/04 | Letter with attachment | Litigation | *See* Privilege grounds stated in No. 6, above. | Protect, II.B.4. |
| 7 | 6/22/04 | Letter with 4 attachments | Letter is a conveyance of information by client (through general counsel) to Counsel for Plaintiffs. | The cover letter is privileged by reason of I.R.C. §7525 Attorney-Client; Work Product privileges.<br><br>The attachments are subject to the work product privilege.<br><br>The underlying documents are already in possession of the IRS and therefore, subject to the disclosure rules of IRC 6103(h)(4), Defendant's counsel may obtain them from his client.<br><br>To the extent that Defendant's counsel requested them with specific document requests, they have already been produced.<br><br>Therefore, the only information to be gleaned from this production is when undersigned counsel received the specific documents and the fact that counsel received them.  These matters are subject to work product privilege, are irrelevant and not discoverable. | Protect, II.B.4. |
| 7a | 5/24/04 | Letter | Announcement 2004-46 | *See* Privilege grounds stated in No. 7, above. | Produce, II.B.1.a.; II.B.1.d. |
| 7b | 5/17/04 | Letter | Announcement 2004-46 | *See* Privilege grounds stated in No. 7, above. | Produce, II.B.1.a.; II.B.1.d. |
| 7c | 8/25/04 | Cover Letter | Amended state returns 1999-2002 | *See* Privilege grounds stated in No. 7, above. | Produce, II.B.1.a.; II.B.1.d. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 7d | | | Amended state returns 1999-2000 for Arlene, Glenn, Stephen Nussdorf | *See* Privilege grounds stated in No. 7, above. | Produce, II.B.1.a.; II.B.1.d. |
| 8 | 10/11/05 | Letter with multiple attachments | Letter is a conveyance of information by CPA in his role as hired assistant to Counsel in preparation for litigation.<br><br>The attached documents consist of documents consist of documents previously requested and provided to IRS by client along with workpapers. | The cover letter is privileged by reason of I.R.C. §7525 Attorney-Client; Work Product privileges.<br><br>The attachments are subject to the work product privilege.<br><br>The underlying documents are already in possession of the IRS and therefore, subject to the disclosure rules of IRC 6103(h)(4), Defendant's counsel may obtain them from his client.<br><br>To the extent that Defendant's counsel requested them with specific document requests, they have already been produced.<br><br>Therefore, the only information to be gleaned from this production is when undersigned counsel received the specific documents and the fact that counsel received them.  These matters are subject to work product privilege, are irrelevant and not discoverable. | Protect, II.B.3.e. |
| 8a | No Date | Slip sheet | IRS Submissions | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8b | No Date | Slip sheet | IDRs and Other Correspondence | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8c | | Misc. work papers, bank stmts., etc. | Bank statements, work papers, etc. | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8d | No Date | Slip sheet | Title page | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8e | 12/1999 | Spread sheet | Accounting | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8f | Multiple | Spread sheet | Accounting | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 8g | 12/31/99 | Statement | Statement | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8h | 3/02/00 | E-mail | Calculations | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8i | No Date | Spread sheet | Accounting | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8j | No Date | List | Accounting | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8k | 1/11/00 | Spread sheet | Tax Schedule | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8l | 1/11/00 | Spread sheet | Loans | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8m | 1/11/00 | Spread sheet | Accounting | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8n | 12/1999 | Spread sheet | Accounting | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8o | Multiple | Spread sheet | Accounting | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8p | 12/21/99 | Statement | Statement | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8q | 12/1999 | Statement | Statement | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8r | 12/1999 | Statement | Activity Report | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8s | 1/11/00 | Spread Sheet | Tax Schedule | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8t | 12/99 | Statement | Calculations | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8u | 1/12/00 | Facsimile | Calculations | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8v | Multiple | Spread Sheet | Summary | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8w | 1/11/00 | Spread Sheet | Loans | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8x | 12/31/99 | Handwritten Note | Balance | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 8y | 9/9/03 | Spread Sheet | Summary | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8z | 1/11/00 | Spread Sheet | Accounting | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8aa | 1/02/01 | Spread Sheet | Tax Schedule | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8bb | 12/2000 | Statement | Accounting | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8cc | 12/30/99 | Confirmation | Transaction | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8dd | 12/13/99 | Confirmation | Transaction | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8ee | 12/13/99 | Confirmation | Transaction | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8ff | 12/13/99 | Confirmation | Transaction | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8gg | 12/13/99 | Confirmation | Transaction | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8hh | 12/21/99 | Confirmation | Transaction | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8ii | 01/18/00 | Confirmation | Transaction | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8jj | 12/31/00 | Sheet | Balance Sheet and Notes | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8kk | 01/2000-12/2000 | Sheet | Comparisons | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8ll | 12/31/00 | Sheet | Balance sheet and Notes | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8mm | 12/200 | Sheet | Comparisons | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8nn | 12/31/99 | Sheet | Balance sheet and Notes | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8oo | 12/1999 | Sheet | Comparisons | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8pp | 01/31/01 | Letter | Redemption | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 8qq | 01/31/01 | Letter | Withdrawal | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8rr | 02/01/01 | Letter | Withdrawal | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8ss | 12/31/99 | Financial Statement | Financial Statement for December 31, 1999 | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8tt | 12/31/00 | Financial Statement | Financial Statement for December 31, 2000 | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8uu | 3/22/02 | Return | 1065 US Partnership Return for Evergreen Trading, LLC for Tax year 1999 | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 8vv | 3/10/01 | Return | 1065 US Partnership Return for Evergreen Trading, LLC for Tax year 2000 | *See* Privilege grounds stated in No. 8, above. | Produce, II.B.1. |
| 9 | 11/11/99 | Facsimile cover with attachment | Legal impression/advice noted by attorney and conveyed to client | Attorney-Client; Work product privileges. | Protect, II.B.4. |
| 10 | No Date | Note with attachment | Litigation | Attorney-Client; Work Product privileges. | Produce, II.B.2.a. |
| 11 | 6/29/04 | E-mail with attachments | The final e-mail is an internal communication between Counsel and his paralegal. The bottom portion of the e-mail is Counsel requesting information in preparation of litigation | Attorney-Client; Work product privileges. The over breadth of Request 31 is further revealed by counsel having to create a privilege log of internal in-house communications. | Protect, II.B.4.; II.B.3.e. |
| 11a | 6/10/99 | Attachment | Copy of pleading in another case | | Produce, II.B.2.a. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 12 | 7/22/04 | E-mail | Letter from New York State Department of Taxation<br><br>NS008706-NS008707 July 8, 2004 letter from Joseph F. Von Bevern of the New York State Department of Taxation to Glenn Nussdorf and Claudine Strum with cc: to Eric Hananel, CPA and Lawrence Cohen, CPA<br><br>NS008708-NS008709 July 8, 2004 letter from Joseph F. Von Bevern of the New York State Department of Taxation to Arlene Nussdorf with cc: to Eric Hananel, CPA and Lawrence Cohen, CPA. | Attorney-Client Work Product privileges. | First page protect, II.B.4.; produce remaining pages, II.B.1. |
| 12a | 7/23/04 | Letter with IDR | Letter Stating that federal tax return for December 31, 2001 has been selected for audit with attached IDR Request #1. | Document already in possession of Internal Revenue Service. | Produce, II.B.1. |
| 12b | | Duplicate of NS008710-NS008713 | Duplicate of NS008710-NS008713 | Duplicate of NS008710-NS008713 | Protect, II.B.1.b. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 13 | 7/22/04 | E-mail | Email string to include e-mail from Fred Pignataro to Fred Paliani, Michael, Katz, Eric Hananel and Larry Cohen, then e-mail forward from Fred Paliani to Sam Linsky and then from Sam Linsky to Nicole Zalenski<br><br>*NS008720-NS008723 is* a Duplicate of  NS008710-NS008713 | Attorney-client; work Product privileges. | Top email protect, II.B.4.; second email produce, II.B.3.d.; letter from IRS produce, II.B.1. |
| 14 | | | Duplicate of NS008718-NS-008713 | Duplicate of NS008718-NS008723 | Protect; II.B.1.b. |
| 15 | 7/28/04 | E-mail with attachments | E-mail string to include e-mail from Lawrence Cohen to David Aughtry and Sam Linsky and then from Sam Linsky to Nicole Zalenski<br><br>NS008732-NS008735 *is a Duplicate of*  NS008710-NS008713 | Attorney-Client; Work Product privileges. | Top email protect, II.B.4.; bottom emails produce, II.A.1.; attachment produce II.B.1. |
| 16 | | | Duplicate of NS008730-NS008735 | Duplicate of NS008730-NS008735 | Protect, II.B.1.b. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 17 | 7/29/07 | E-mail | E-mail from Sam Linsky to Nicole Zalenski<br><br>NS008743-NS008746 Letter from Timothy J. Falk, Internal Revenue Agent, to Ruth Nussdorf stating that federal tax return for December 31, 2001 and 2002 has been selected for audit with attached IDR Request #1 | Attorney-Client; Work Product privileges. | top email protect, II.A.2., II.B.4.; bottom email produce, II.B.3.; attached letter produce, II.B.1. |
| 18 | | | *Duplicate of* NS008742-NS008746 | *Duplicate of* NS008742-NS008746 | Protect, II.B.1.b. |
| 19 | 8/9/04 | E-mail | E-mail from Sam Linsky to Nicole Zalenski<br><br>NS008753-NS008764 Letters from Mike Kostelnick, Revenue Agent, to Glenn Nussdorf and Claudine Strum that their federal tax return is being examined, a follow up appointment for a meeting is scheduled for August 17, 2004 and with attached IDR Request #1, #2, & #3. | Attorney-Client; Work product privileges. | First page: top email (8752), II.A.2., II.B.4.; bottom email produce, II.B.3.<br><br>Remainder (8753-8764) produce, II.B.1. |
| 20 | | | *Duplicates of* NS008752-NS008764 | *Duplicates of* NS008752-NS008764 | Protect, II.B.1.b. |
| 21 | Not listed in privilege log nor provided for *en camera* review | | | | |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 22 | 8/24/04 | E-mail | NS008814 e-mail string to include e-mail from Fred Pignataro to Fred Paliani, Michael Katz, Eric Hananel and Larry Cohen, and Sam Linsky then e-mail forward from Sam Linsky to Nicole Zalenski

The attachments are two IDRs issued to Stephen and Alicia Nussdorf.  IDR #2 is found at NS008779-NS008798 and its duplicate is found at NS008815-NS008834.

IDR #1 is found at NS008799-NS008814 and its duplicate is found at NS008835-8848. | Attorney-Client; Work Product privileges. | First page (8778): top email protect, II.A.2., II.B.4.; bottom email produce, II.B.3. Remainder (8779-8813) produce, II.B.1.

8814: top email protect, II.A.2., II.B.4.; bottom email produce, II.B.3. Remainder produce (8815-8850), II.B.1. |
| 23 | | | *Duplicate of* NS008710-NS008711 | *Duplicate of* NS008710-NS008711 | Protect, II.B.1.b. |
| 23.1 | 9/15/04 | IDR | IDR #2-Examination of 2001-12 & 2002-12 Form 1040 Individual Income Tax Returns | Documents already in possession on Defendant. | Produce, II.B.1. |
| 23.2 | 9/15/04 | IDR | IDR #3-Examination of 2001-12 & 2002-12 Form 1040 Individual Income Tax Returns | Documents already in possession on Defendant. | Produce, II.B.1. |
| 23.3 | | | *Duplicate of* NS008710-NS008713 | *Duplicate of* NS008710-NS008713 | Protect, II.B.1.b. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 23.4 | 9/15/04 | Letter | Letter stating that federal tax return for December 31, 2001 and 2002 has been selected for audit | Document already in possession of Internal Revenue Service. | Produce, II.B.1. |
| 23.5 | | | *Duplicate of* NS008851-NS008864 | *Duplicate of* NS008851-NS008864 | Protect, II.B.1.b. |
| 23.6 | | | *Duplicate of* NS008865-NS008885 | *Duplicate of* NS008865-NS008885 | Protect, II.B.1.b. |
| 23.7 | | | *Duplicate of* NS008710-NS008713 | *Duplicate of* NS008710-NS008713 | Protect, II.B.1.b. |
| 24 | 10/14/04 | Facsimile with attachment | NS008931-Cover facsimile with attached IDRs<br><br>NS008932 letter from Mike Kostelnick dated October 6, 2004 to Glenn Nussdorf and Claudine Strum with IDRs #4 & 5<br><br>NS008933-NS008946 is IDR #4<br><br>NS008947-NS008966 is IDR#5 | Attorney-Client; Work Product privileges.<br><br>With the exception of privileged cover facsimile, Defendant is in possession of documents. | First page protect II.B.3.e.; remainder produce, II.B.1. |
| 25 | 12/24/04 | Facsimile with attachment | NS008967-Cover facsimile with attached IDR<br><br>NS008968-72 is IDR #A1 issued by R. Michael Williamson to Glenn Nussdorf & Claudine Strum | Attorney-Client; Work Product privileges.  With the exception of privileged cover facsimile, Defendant is in possession of documents. | Protect, II.B.3.e. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 26 | 3/30/05 | Facsimile with attachments | Letter is a conveyance of information by CPA in his role as hired assistant to Counsel in preparation for litigation.<br><br>The attached documents are broken into items 1, 1a, 2, 3, 4, and an IDR. | Attorney-Client; Work Product privileges. | Protect, II.B.3.e. |
| 26a | 12/12/03 | Amendment to operating agreement | Item 1-Bates label NS008975-8980 is Amendment No. 2 to Operating Agreement of SN Investments 2001 LLC. | *See* Privilege grounds stated in No. 26, above. | Produce, II.B.1., II.B.2.a. |
| 26b | 12/12/03 | E-mail with spreadsheet | Item 1a, bates labels NS08981-8983 is an e-mail exchanges between Lawrence H. Cohen, Certified Public Accountant and James Haber of the Diversified Group.  The e-mail exchange occurred on December 12, 2003 and includes an attached spreadsheet. | *See* Privilege grounds stated in No. 26, above. | Produce, II.B.3.f. |
| 26c | | | *Duplicates of*     NS001905-NS001906 [Doc 2a] | *Duplicates of* NS001905-NS001906 [Doc 2a] | Protect, II.B.1.b. |
| 26d | 10/9/01 | Agreement | Item 3, bates labeled NS008986 through NS008995, is a Consulting Agreement between BDO Seidman LLP and Glenn Nussdorf. | *See* Privilege grounds stated in No. 26, above. | Produce, II.B.1., II.B.2.a. |
| 26e | | | *Duplicates of* NS001907 | *Duplicates of* NS001907 | Protect, II.B.1.b. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 26f | 8/31/04 | IDR | Item 5, bates labeled NS008997 through NS009010, is an Information Document Request #1 issued by agent R. Michael Williamson upon Stephen & Alicia Nussdorf.  Pertaining to taxable years 2001. | Document in possession of Defendant. | Produce, II.B.1. |
| 27 | 3/31/05 | Facsimile with attachment | Letter is a conveyance of information by CPA in his role as hired assistant to counsel in preparation for litigation. | Attorney-Client; Work Product privileges. | Protect, II.B.3.e. |
| 27a | 3/6/02 | Letter | The attached are documents bates labeled NS009012-NS009014 which is a letter form Joseph A. Klausner of BDO Seidman, LLP to Glenn Nussdorf dated March 6, 2002 regarding "disclosure initiative" and bates labeled NS009015 through NS009018 BDO form letters unaddressed. | *See* Privilege grounds stated in No. 27, above. | Produce, II.A.3. |
| 28 | 4/1/05 | Facsimile with attachments | Facsimile is a conveyance of information by CPA in his role as hired assistant to Counsel in preparation for litigation. | Attorney-Client; Work Product Privileges.  Beyond the scope of RCFC 26(b); contains information that pertains to persons and entities that are irrelevant to the present matter. | Protect, II.B.3.e. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 28a | 3/27/02 | Letter | The attached documents are bate labeled NS009020 through NS902. NS9020 is a March 27, 2002 letter from James Haber to Glenn Nussdorf regarding closing binders for transaction with cc's to Ira Akselrad, Esq., Joe Kalusner & Larry Cohen. | *See* Privilege grounds stated in No. 28, above. | Produce, II.B.3.f. |
| 28b | 2/22/02 | Letter | NS9021 is a February 22, 2002 letter from James Haber to Ruth Nussdorf regarding closing binders for transaction with cc's to Ira Akselrad, Esq., Joe Klausner & Larry Cohen. | *See* Privilege grounds stated in No. 28, above. | Produce, II.B.3.f. |
| 28c | 3/27/02 | Letter | NS9022 is a March 27, 2002 letter from James Haber to Ruth Nussdorf regarding closing binders for transaction with cc's to Ira Akselrad, Esq., Joe Klausner & Larry Cohen. | *See* Privilege grounds stated in No. 28, above. | Produce, II.B.3.f. |
| 28d | 4/9/02 | Letter | NS9023 is an April 9, 2002 letter from James Haber to Ruth Nussdorf regarding closing binders for transaction with cc's to Ira Akselrad, Esq., Joe Klausner & Larry Cohen. | *See* Privilege grounds stated in No. 28, above. | Produce, II.B.3.f. |
| 29 | | | *Duplicate of* NS009019-NS009023 | *Duplicate of* NS009019-NS009023 | Protect, II.B.1.b. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 29.1 | 4/5/02 | Certificate of Facts | AN Investments LLC Certificate o Facts - unsigned-facts concern 2001 transaction | Beyond the scope of RCFC 26(b). | Produce, II.C. |
| 29.2 | | | *Duplicate of* NS009023 | *Duplicate of* NS009023 | Protect, II.B.1.b. |
| 29.3 | 4/5/02 | Certificate of Facts | SN Investments LLC Certificate of Facts unsigned-facts concern 2001 transaction | Beyond the scope of RCFC 26(b). | Produce, II.C. |
| 29.4 | 3/27/02 | Letter | Cover letter for closing binder of transaction. | Beyond the scope of RCFC 26(b). | Produce, II.C. |
| 29.5 | 4/9/02 | Facsimile with attachments | NS009025-Cover Facsimile sheet (with attachments) | Beyond the scope of RCFC 26(b). | Produce, II.C. |
| 29.5(a) | | | *Duplicate of* NS009034 | *Duplicate of* NS009034 | Protect, II.B.1.b. |
| 29.5(b) | | | *Duplicate of* NS009032-33 | *Duplicate of* NS009032-33 | Protect, II.B.1.b. |
| 29.5(c) | | | *Duplicate of* NS009023 | *Duplicate of* NS009023 | Protect, II.B.1.b. |
| 29.5(d) | | | *Duplicate of* NS009029-30 | *Duplicate of* NS009029-30 | Protect, II.B.1.b. |
| 29.5(e) | 4/9/02 | Letter | NS009042-is an April 9, 2002 letter from James Haber to Glenn Nussdorf regarding tax opinion with cc to Larry Cohen. | *See* Privilege grounds stated in No. 29.5, above. | Produce, II.C. |
| 29.5(f) | | | NS009043-44 is an April 5, 2002 GN Investments LLC Certificate of Facts -unsigned-facts concern 2001 transaction. | *See* Privilege grounds stated in No. 29.5, above. | Produce, II.C. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 29.5(g) | 4/9/02 | Letter | NS009045-is an April 9, 2002 letter from James Haber to Glenn Nussdorf regarding tax opinion with cc to Larry Cohen. | *See* Privilege grounds stated in No. 29.5, above. | Protect, II.B.1.b. |
| 29.5(h) | 4/5/02 | Certificate of Facts | NS009046-47 is an April 5, 2002 RN Investments LLC Certificate of Facts -unsigned- facts concern 2001 transaction. | *See* Privilege grounds stated in No. 29.5, above. | Produce, II.C. |
| 29.6 | | | *Duplicates of* NS009042-NS009044 | *Duplicates of* NS009042-NS009044 | Protect, II.B.1.b. |
| 29.7 | 4/2/05 | Invoice | Bill to reset Chamberlain Hrdlicka mail meter | Irrelevant. | Protect, II.C. |
| 29.8 | 9/26/05 | FPAA | FPAA | Documents already in possession of Defendant | Produce, II.B.1. |
| 29.9 | 9/26/05 | Notice of Deficiency | Tax year Ended Dec. 31, 1999 and Dec. 31, 2000. | Documents already in possession of Defendant. | Produce, II.B.1. |
| 30 | Multiple | Additional attachments | Materials provided by CPA to counsel.  The documents are a package of material that include individual amended state returns for the years 1999-2002 along with related correspondence and U.S. Individual Tax Returns for 1999-2001.  All of these documents are in possession of the New York State Department of Taxation and Finance and/or the Internal Revenue Service. | Attorney-client; Work Product privileges.<br><br>The over breath of Request 31 is again revealed by counsel having to detail its internal system of managing documents.  While the documents themselves are in possession of the IRS, when counsel received the documents or how counsel chose to organize the documents are the only thing that could be revealed by production.  The IRS is not entitled to learn how, when or why counsel received documents from its client. | Produce, II.B.1.e. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 31 | 12/19/05 | Facsimile | Cover sheet facsimile from client with attached documents received from the IRS. | Attorney-Client; Work Product privileges. | First page protect, II.A.1., II.B.4.; remainder of pages produce, II.B.1. |
| 32 | | | *Duplicates of* NS001904-NS001930 | *Duplicates of* NS001904-NS001930 | Protect, II.B.1.b. |
| 33 | 8/10/04 | Letter with attachments | Letter is a conveyance of information by CPA in his role as hired assistant to Counsel in preparation for litigation.<br><br>The attachments are privileged agreements that include agreements that concern other taxpayers completely unrelated to the present litigation. | Attorney-Client; Work Product privileges.  Irrelevant; beyond the scope of RCFC 26(b). The over breath of Request 31 is again revealed by counsel having to detail its internal system of managing documents.  The "NS" Bates prefix is a prefix that the staff for the undersigned counsel assigned to documents without regard to relevancy, redundancy, work product, privilege, or, as revealed here, even documents remotely related to the current litigation. | Protect, II.B.2. |
| 33a | | | BDO/CHWWM/Cuillo | | Produce, II.B.3. |
| 33b | | | BDO/CHWWM/Gunther | | Produce, II.B.3. |
| 33c | | | BDO/CHWWM/Arlene Nussdorf | | Produce, II.B.3. |
| 33d | | | BDO/CHWWM/Glenn Nussdorf | | Produce, II.B.3. |
| 33e | | | BDO/CHWWM/Ruth Nussdorf | | Produce, II.B.3. |
| 33f | | | BDO/CHWWM/Stephen Nussdorf | | Produce, II.B.3. |

| Lead Doc. No. | Date | Type of Document | Subject Matter | Privilege Grounds | Ruling |
|---|---|---|---|---|---|
| 34 | 8/14/04 | Attachments to letter labeled NS009922 | Letter is a conveyance of information by CPA in his role as hired assistant to Counsel in preparation for litigation.<br><br>The attached documents to the CPA's letter are transactions documents for transactions that occurred beyond the taxable years ended December 31, 1999, and December 31, 2000.  These documents are already in possession of the Internal Revenue Service, and therefore, subject to the disclosure rules of IRC 6103(h)(4), Defendant's counsel may obtain them from his client. | Attorney-Client; Work Product privileges.  Beyond the scope of RCFC 26(b); contains information that pertains to persons and entities that are irrelevant to the present matter. | Produce, II.B.3., II.C. |
| 35 | 12/29/05 | Letter with attachments | Letter is a conveyance of information by CPA in his role as hired assistant to Counsel in preparation for litigation.<br><br>The attached documents, related to an audit beyond the tax years in question in the present matter, are already in possession of the Internal Revenue Service, and therefore, subject to the disclosure rules of IRC 6103(h)(4), defendant's counsel may obtain them from his client. | Attorney-Client; Work Product privileges.<br><br>The over breath of Request 31 is again revealed by counsel having to detail its internal system of managing documents.  While the documents themselves are in possession of the IRS, when counsel received the documents or how counsel chose to organize the documents are the only thing that could be revealed by production.  The IRS is not entitled to learn how, when or why counsel received documents from its client. | First page protect, II.B.3.; remainder produce, II.B.1. |